**STEVEN M., et al.**

v.

**Thomas K. GILHOOL, et al.**

**Civ. A. No. 87–0604.**

United States District Court,
E.D. Pennsylvania.

Nov. 29, 1988.

---

Theresa Glennon and Janet Stotland, Education Law Center, Philadelphia, Pa., for plaintiffs.

Joanne D. Sommer, Doylestown, Pa., Maria Parisi Vickers, Philadelphia, Pa., William B. Moyer, Doylestown, Pa., Tai Park, New York City, for defendants.

OPINION

JOSEPH S. LORD, III, Senior District Judge.

### Introduction

This is a class action in which the parties have filed cross-motions for summary judgment.

The plaintiff class consists of school-age children who live in "children's institutions" [1] in Pennsylvania and who may be required to pay tuition to attend the public schools where they live because their parents live out-of-state. At least some members of the plaintiff class live in the institutions for extended periods of time. Pennsylvania's education law deems plaintiffs, among others, to be non-residents and on that basis permits school districts to charge tuition. Pennsylvania also requires that plaintiffs' tuition be paid, or at least guaranteed, before they are enrolled. Plaintiffs' principal argument is that a child whose parents intend for him to live in Pennsylvania indefinitely must be treated for tuition purposes as a resident of the school district where he lives, regardless of where the child's parents reside. Defendants contend that plaintiffs are not bona fide residents of the districts in which they live or of the Commonwealth, so that charging them tuition is permissible. Defendants also argue that this case is moot. I deal first with defendants' latter argument.

### Mootness

Named plaintiff Steven M. came from New York to live in Pennsylvania in September 1986. In January 1987, he began attending public school in Central Bucks School District ("CBSD"), with his parents paying tuition for him. The complaint in this action was filed shortly thereafter and the original class was certified on November 6, 1987.[2] In June 1988, Steven M. returned to live with his parents in New

---

1. "Children's institutions" are "any orphan asylum, home for the friendless, children's home, or other institution for the care or training of orphans or other children...." 24 P.S. § 13–1306.

2. In June, 1988, plaintiffs moved to amend the class definition to correspond to their legal arguments. I will grant their unopposed motion.

York. Defendants assert that the case became moot when Steven M. left Pennsylvania.

This argument is not persuasive. While Steven M. and his parents may never again have to pay tuition for him to attend Pennsylvania public schools, their past tuition payments have not been refunded. Therefore, they retain an interest in the case. *See Galda v. Bloustein,* 686 F.2d 159, 163 (3d Cir.1982). Moreover, the controversy remains alive with respect to the other members of the class whom Steven M. represents. *See Sosna v. Iowa,* 419 U.S. 393, 401, 95 S.Ct. 553, 558, 42 L.Ed.2d 532, 541 (1975).

### Procedural Due Process

The Pennsylvania Public School Code of 1949, 24 P.S. § 1–101 *et seq.,* provides that "[e]very child, being a resident of any school district, between the ages of six (6) and twenty-one (21) years may attend public school in his district...." 24 P.S. § 13–1301. There is no requirement that resident children pay tuition. *Id.* Members of the class, however, may be required to pay tuition before they are allowed to enter the school on the asserted ground that they are not residents of the district.[3] The basis for this conclusion is 24 P.S. § 13–1302. That section provides:

> A child shall be considered a resident of the school district in which his parents ... reside...."

The Act thus establishes a presumption but fails to provide for a hearing or any other opportunity to rebut the presumption which therefore becomes irrebuttable.

■ Defendant Central Bucks School District ("CBSD") contends that the statute does provide an opportunity for plaintiffs to establish their Pennsylvania residence. CBSD cites the last sentence of 24 P.S. § 13–1308, which states that an institutionalized child whose "legal residence is [in the opinion of the Secretary of Education]

in Pennsylvania, but cannot be fixed in a particular district ..." may have his tuition paid by the Commonwealth. However, a child can attain this status only if at the time he is admitted to the institution his parents reside in Pennsylvania *and* his parents later abandon him. 22 Pa.Code § 11.18(c). Plaintiffs have not been abandoned by their parents and in many cases their parents have never lived in Pennsylvania.

CBSD also contends that plaintiffs may establish resident status under 22 Pa.Code § 13.31 and § 13.33. Those regulations permit parents of "exceptional" children to challenge the type of education provided to their children. Those regulations do not purport to allow parents to challenge the complete denial of tuition-free education based upon the presumption of non-residence in 24 P.S. § 13–1302. I hold that this failure to provide any sort of hearing denies plaintiffs procedural due process and is therefore unconstitutional.

*Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973) is squarely on point. In that case, two University of Connecticut students sued in the United States District Court for the District of Connecticut, alleging that they were bona fide Connecticut residents and challenging the constitutionality of a Connecticut statute, under which they were permanently and irrebuttably classified as nonresidents for the purpose of determining their tuition and fees. Specifically, the Connecticut statute provided that an unmarried student is a nonresident if his legal address was outside of Connecticut for any part of the 1-year period immediately preceding his application for admission, and that a married student is a nonresident if his legal address was outside of Connecticut at the time of his application for admission. A three-judge court found that both students were bona fide residents of Connecticut, held the Connecticut statutory provisions unconstitutional, enjoined their enforcement, and

---

**3.** Defendants have also cited the second paragraph of 24 P.S. § 13–1308 as authority for charging tuition for plaintiffs' schooling. That paragraph, however, provides no such authority. Authority for charging tuition for the edu-

cation of "non-resident" institutionalized children is provided by 24 P.S. § 13–1306. Section 13–1308 merely provides a mechanism for collecting tuition which has been charged pursuant to § 13–1306.

ordered refunds of tuition and fees paid by the two students in excess of those paid by resident students.

On direct appeal, the United States Supreme Court affirmed. It held that the statute violated the due process clause of the Fourteenth Amendment by creating a permanent and irrebuttable presumption of non-residence when the presumption is not necessarily or universally true in fact and the state has reasonable alternative means for determining residence.

In sum, since Connecticut purports to be concerned with residency in allocating the rates for tuition and fees at its university system, it is forbidden by the Due Process Clause to deny an individual the resident rates on the basis of a permanent and irrebuttable presumption of non-residence, when that presumption is not necessarily or universally true in fact, and when the State has a reasonable alternative means of making the crucial determination. Rather, standards of due process require that the State allow such an individual the opportunity to present evidence showing that he is a bona fide resident entitled to in-state rates.

412 U.S. at 452, 93 S.Ct. at 2236, 37 L.Ed.2d at 71. It has been argued that *Vlandis* has been limited or overruled by *Weinberger v. Salfi*, 422 U.S. 749, 772, 95 S.Ct. 2457, 2470, 45 L.Ed.2d 522, 543 (1975). The Court has rejected this argument when "domicile" or "residence" requirements are in issue. In *Elkins v. Moreno*, another tuition case, the Court specifically said:

Because petitioner makes domicile the "paramount" policy consideration and because respondents' contention is that they can be domiciled in Maryland but are conclusively presumed to be unable to do so, this case is squarely within Vlandis as limited by Salfi to those situations in which a State "purport[s] to be concerned with [domicile, but] at the same time den[ies] to one seeking to meet its test of [domicile] the opportunity to show factors clearly bearing on that issue."

435 U.S. 647, 660, 98 S.Ct. 1338, 1346, 55 L.Ed.2d 614, 625 (1978), *paraphrasing, Salfi, supra.*

Section 13–1302 of Pennsylvania's education law is indistinguishable from the Connecticut statute struck down in *Vlandis.* Like the Connecticut statute, Pennsylvania's statute in § 13–1301 purports to be concerned with the residence of the student in deciding whether to admit him to school tuition-free. The term "resident" is well known in the law, if not precisely defined. "Residence" invariably means at least presence for more than a few days and at most domicile. *Compare In re Lesker,* 377 Pa. 411, 418, 105 A.2d 376, 380 (1954) (residence means a "tarrying place" for more than the moment); *Martinez v. Bynum,* 461 U.S. 321, 331, 103 S.Ct. 1838, 1844, 75 L.Ed.2d 879, 888 (1982) (residence requires physical presence and intention to remain); *Vlandis,* 412 U.S. at 448, 93 S.Ct. at 2234, 37 L.Ed.2d at 69 (residence and domicile used interchangeably). *Martinez* enunciated a constitutional definition of "residence" in the school context: "Although the meaning may vary according to context, residence generally requires both physical presence and an intention to remain." 461 U.S. at 330, 103 S.Ct. at 1843, 75 L.Ed.2d at 888.

Like Connecticut's statute, Pennsylvania's statute, in § 13–1302, disregards factors clearly bearing on the issue of the student's residence no matter how strictly the term is defined: where he lives, why he came to live there, whether he intends to remain there indefinitely and, in the case of a minor, whether his parents intend for him to remain there indefinitely. Instead, Pennsylvania's statute like Connecticut's presumes irrebuttably that the student's former residence, his parents' home, remains his residence.

Contrary to defendants' suggestion, *Martinez* does not save Pennsylvania's statute. In *Martinez,* the Court held constitutional a Texas statute which denied tuition-free education to a child who lived apart from his parent or guardian if his presence in the school district was for the primary purpose of attending the public

free schools there. 461 U.S. at 323, 103 S.Ct. at 1839, 75 L.Ed. at 883. Texas's local school boards were empowered to ascertain why a child had come to the district. Texas Education Code Annotated § 21.031(d), *quoted at,* 461 U.S. at 323 n. 2, 103 S.Ct. at 1840 n. 2, 75 L.Ed.2d at 884 n. 2. The Court held that the Texas statute was a bona fide residence test.

The Texas statute approved in *Martinez* differed in one important respect from Pennsylvania's statute. Under the Texas statute, a child living apart from his parents, in an institution or elsewhere, could obtain free schooling no matter where his parents lived so long as the child established that he had not come to live in the district for the primary purpose of obtaining free public schooling there. *Id.* Pennsylvania's statute does not give plaintiffs the same opportunity to establish residence here.

Pennsylvania's irrebuttable presumption can survive only if it is universally true that a child resides in the same district where his parents reside. However, this proposition is not universally true. Courts have recognized this at least since 1890, when the Connecticut Supreme Court held that a 13-year-old girl living with her aunt and uncle was a resident of the district where she lived, not of the district where her parents lived. *Yale v. West Middle School,* 59 Conn. 489, 22 A. 295 (1890). As was the case in *Vlandis,* it may be true that most members of the plaintiff class "have no real intention of becoming [Pennsylvania] residents and will never do so. But it is clear that not all [plaintiffs] inevitably fall into this category." 412 U.S. at 448, 93 S.Ct. at 2234, 37 L.Ed.2d at 69.

*Vlandis* permits Pennsylvania to "establish such reasonable criteria for in-state [or in-district] status as to make virtually certain that students who are not, in fact, bona fide residents of the state, but who have come [there] solely for educational purposes, cannot take advantage of the [free schools]." *Id.* at 443, 93 S.Ct. at 2232, 37 L.Ed.2d at 72. The Court reiterated this point with respect to school children in *Martinez.* 461 U.S. at 331, 103 S.Ct. at 1844, 75 L.Ed.2d at 889. For exam-ple, Pennsylvania might consider whether a child remains in the district or returns to live with his parents during summer vacations, as evidence of an intention to remain *vel non.*

The due process clause simply forbids Pennsylvania from presuming, without opportunity for rebuttal, that a school-age child invariably resides wherever his parents reside and charging, or not charging, tuition accordingly. *See also Horton v. Marshall Public Schools,* 769 F.2d 1323, 1332 (8th Cir.1985) (striking down school district policy similar to Pennsylvania's, on due process and equal protection grounds). I therefore hold that 24 P.S. § 13–1302 is unconstitutional because it denies procedural due process.

The inquiry, however, does not end there. Section 13–1302 having fallen under its unconstitutional weight, plaintiffs cannot be considered residents of a state other than Pennsylvania solely because their non-resident parents live in that other state. But this does not prove that the children are residents of Pennsylvania. The answer to that question depends upon an individualized factual resolution of the factors involved in the determination of residence set forth in *Martinez.* 461 U.S. at 330, 103 S.Ct. at 1844, 75 L.Ed.2d at 888. I leave to Pennsylvania the mechanics for making this determination.

### Equal Protection and Right to Travel

Plaintiffs' procedural due process argument did not persuade me to grant the plaintiffs' request to declare all class members to be Pennsylvania residents. Neither do their equal protection and right-to-travel arguments. Section 13–1301 of Pennsylvania's Public School Code requires that all children be residents of the district in which they seek schooling before the district must admit them tuition-free. I have held on procedural due process grounds that Pennsylvania must give each plaintiff an opportunity to establish that he or she is a resident. This is no more and no less than the Public School Code does for any other child who knocks on the schoolhouse door. Therefore, the relief which I have afforded to plaintiffs gives them equal protection under the Public School Code.

■ Plaintiffs contend that institutionalized children whose parents live out-of-district but in-state are permitted to attend school tuition-free, even if those children cannot pass the *Martinez* test for residency within the district. Plaintiffs argue that they should be treated the same way.

The premise of plaintiffs' argument, their interpretation of the statute, is unsound. Tuition *is* charged for institutionalized children whose parents live out-of-district but in-state. 24 P.S. § 13–1306. The only way in which those children are favored over plaintiffs is that Pennsylvania collects the tuition for those children from their parents' home school districts, while plaintiffs must themselves secure payment of their tuition. *Compare* § 13–1308 (first paragraph) with § 13–1308 (second paragraph).

This distinction between charging tuition and collecting tuition is justifiable. There is an obvious, legitimate basis for favoring children whose parents live out-of-district but in-state with respect to tuition collection. Pennsylvania can easily and reliably collect tuition from another in-state school district. *See* 24 P.S. § 13–1308 (first paragraph). No such easy and reliable means exists to collect tuition from an out-of-state district. Moreover, institutionalized children whose parents live out-of-district but in-state may not be residents, under the *Martinez* definition, of the district. But they almost certainly are residents of the Commonwealth. The same cannot be said for many plaintiffs. Pennsylvania is free to prefer its own state residents over residents of other states.

From what I have already said, I think it is clear that plaintiffs' right-to-travel argument carries them no further than does their procedural due process argument.

### Statutory Claims

Steven M. and his parents have raised individual claims under the Rehabilitation Act of 1973, specifically 29 U.S.C. § 794, and the Education of the Handicapped Act, specifically 20 U.S.C. § 1412(2)(C). It appears that resolution of those statutory claims, like the resolution of Steven's constitutional claims, will require an evidentiary hearing concerning Steven's residence. For the sake of judicial economy, I will defer my discussion of the individual, statutory claims until after the residency hearing mentioned below.

### Relief

Having concluded that Connecticut's irrebuttable presumption violated the due process clause, the district court in *Vlandis* proceeded to ascertain itself the residence of the two plaintiffs, rather than giving the state a second opportunity to do so. *Kline v. Vlandis*, 346 F.Supp. 526, 529 (D.Conn. 1972). The Supreme Court said nothing in its affirmance which suggests the district court's approach was improper. Based upon a review of the affidavits presented by the parties, I conclude that there is a material issue of fact concerning whether Steven M. and his parents ever intended for him to remain in CBSD indefinitely. A hearing will be scheduled to resolve that dispute.

Because *Vlandis* was not a class action, it provides no authority for me to determine the bona fide residence of the other members of the class. It would be unduly burdensome on the court and an unwarranted intrusion upon state prerogatives for me to do so. I will, therefore, enjoin defendants from enforcing against plaintiffs the irrebuttable presumption in 24 P.S. § 13–1302. I will further order defendants to offer to all class members an individualized opportunity to establish that they are bona fide residents of the districts in which they live, or that they were residents at some time after November 6, 1987 when the class was certified.

### ORDER

AND NOW, this 29th day of November, 1988, it is ORDERED that:

1. The first sentence of 24 P.S. § 13–1302 is DECLARED to be null and void so far as it applies to plaintiffs, because it violates the Due Process Clause of the Fourteenth Amendment.

2. Defendants are ENJOINED from denying members of the plaintiff class resident status for tuition purposes solely because plaintiffs' parents reside outside the district where plaintiffs reside.

3. Defendants are ORDERED to offer plaintiffs, other than Steven M., an opportunity to establish that they are residents of the districts in which they live, or were residents at any time since November 6, 1987.

4. As to those members of the plaintiff class, if any, whom defendants ascertain to be, or to have been, residents of a Pennsylvania school district, defendants are ORDERED to permit them to attend the local schools as residents and to refund to them any and all monies which they or their families paid as tuition during the period when they are or were residents.

5. Defendant, the Secretary of Education of the Commonwealth of Pennsylvania is ORDERED to instruct the various school districts within his jurisdiction to comply with this order.

6. A hearing will be held on the 14th day of December, 1988, at 10 a.m. o'clock, in Courtroom 17–A, United States Courthouse, 601 Market Street, Philadelphia, PA 19106, to ascertain where the residence of Steven M. was between January, 1987 and June, 1988.