**COMMONWEALTH of Pennsylvania, DE-
PARTMENT OF TRANSPORTATION,
BUREAU OF DRIVER LICENSING,
Appellant,**

v.

**David A. CLAYTON, Sr., Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 19, 1995.

Decided Nov. 1, 1996.

Timothy P. Wile, Harold H. Cramer, Harrisburg, for PENNDOT.

Thomas J. Graham, Washington, for D. Clayton.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

*OPINION OF THE COURT*

CAPPY, Justice.

◼ The instant appeal presents us with the issue of whether a regulation which provides for the revocation of one's operating privilege for a period of one year upon the occurrence of only a single epileptic seizure, without the licensee having an opportunity to present medical evidence in an effort to establish his or her competency to drive, violates due process. Both the trial court and the Commonwealth Court have ruled that the regulation at issue here is violative of due process. For the reasons that follow, we affirm that conclusion.

The facts giving rise to the instant appeal are not in dispute. On September 5, 1986, Appellee, David A. Clayton, Sr., suffered a grand mal epileptic seizure. He had no prior history of seizure disorders. On October 25, 1986, Appellee's treating physician, Dr. H.J. Silvis, submitted to the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (Department) a convulsive disorder form. The form essentially contained information that Appellee

had suffered a grand mal seizure on September 5, 1986, and that he was being treated with a daily dose of 300 milligrams of Dilantin. Significantly, Dr. Silvis noted on the form that Appellee was a safe driver and that he was physically and mentally competent to operate a motor vehicle. This report was submitted in accordance with 75 Pa.C.S. § 1518(b).[1]

On November 28, 1986, following receipt of the report, the Department notified Appellee that his operating privileges were being recalled pursuant to 75 Pa.C.S. § 1519(c) which provides that the Department shall recall the operating privileges of any person who has been deemed incompetent to drive.[2] Appellee was deemed incompetent to drive under the regulations promulgated pursuant to Section 1517 of the Vehicle Code which provides for the creation of a medical advisory board whose purpose it is to formulate rules and regulations concerning the physical and mental criteria required to obtain and to retain an operator's license. 75 Pa.C.S. § 1517. The regulation respecting epilepsy, which is found at 67 Pa.Code § 83.4, provides for the recall of a person's operating privilege for a period of one year following the occurrence of a single epileptic seizure irrespective of whether that person's treating physician has determined that the licensee is competent to drive a vehicle. Specifically § 83.4 provides:

§ 83.4 **Epilepsy.**

(a) *General.* A person suffering from epilepsy may not drive unless their personal licensed physician reports that the person has been free from seizure for a period of at least 1 year immediately preceding, with or without medication.

(b) *Applicants between the ages of 16 and 18 years.* Applicants between the ages of 16 and 18 years applying for their first license shall have been free from seizure for a period of at least 2 years immediately preceding, with or without medication.

(c) *Waiver.* Waiver of the freedom from seizure requirement may be made upon specific recommendation by a licensed physician who specializes in neurology or neurosurgery if:

(1) A strictly nocturnal pattern of the condition has been established over a period of at least 3 years immediately preceding, with or without medication; or

(2) A specific prolonged aura accompanied by sufficient warning has been established over a period of at least 5 years immediately preceding, with or without medication.

Following the recall of his operating privileges, Appellee filed, in the trial court, a statutory appeal pursuant to 75 Pa.C.S. § 1550. As the basis of his statutory appeal, Appellee argued that the mandatory minimum one year suspension under section 84.3(a) of the regulations was substantively unreasonable and procedurally offensive to due process.

A *de novo* hearing was held on March 31, 1987, before a trial judge at which time the Department offered into evidence the convulsive disorder form which Dr. Silvis had previously submitted to the Department. Appellee introduced a questionnaire completed by his physician which declared him fit to drive a vehicle. In addition, Appellee testified that he had suffered no additional seizures since the September 5, 1986 seizure; that he had no difficulty driving after the seizure; and that he continued to take antiseizure medicine.

The trial court sustained Appellee's appeal finding that the provisions of § 83.4 are un-

---

1. 75 Pa.C.S. § 1518(b) provides:

   **(b) Reports by medical personal.**—All physicians and other persons authorized to diagnose or treat disorders and disabilities defined by the Medical Advisory Board shall report to the department, in writing, the full name, date of birth and address of every person over 15 years of age diagnosed as having any specified disorder or disability within ten days.

2. 75 Pa.C.S. § 1519(c) provides:

   **(c) Recall of operating privilege.**—The department shall recall the operating privileges of any person whose incompetency has been established under the provisions of this chapter. The recall shall be for an indefinite period until satisfactory evidence is presented to the department in accordance with [sic] regulations to establish that such person is competent to drive a motor vehicle. Any person aggrieved by recall of the operating privilege may appeal in the manner provided in section 1550 (relating to judicial review).

reasonable and violative of procedural due process. In so ruling, the trial court relied exclusively on an opinion written by Judge Rodgers, also of the Court of Common Pleas of Washington County, in *In re Appeal of Charles R. Wiseman*, 32 D. & C.3d 294 (1983). In that case, Judge Rodgers declared § 83.4 unreasonable concluding that there appeared to be no basis for the view that one epileptic seizure renders all persons unsafe to operate a motor vehicle for a period of at least one year. In support thereof, Judge Rodgers cited to several medical publications which indicate that the symptoms and frequency of epilepsy vary with each individual, noting as well that the Department offered no countervailing evidence that would suggest that every person who experiences one epileptic seizure is rendered unsafe to drive a motor vehicle. Alternatively, Judge Rodgers ruled that even if reasonable, the regulation offends procedural due process insofar as it provides for no meaningful hearing, but rather creates an irrebuttable presumption that such a person is incompetent to drive for a period of one year.

The Commonwealth Court here discussed at length the issue of whether the irrebuttable presumption doctrine rests upon substantive due process analysis or that of procedural due process seemingly concluding that only procedural due process rights are implicated. As will be discussed *infra*, such a distinction is not only ill-advised but also not critical to a resolution of the instant matter. The Commonwealth Court ultimately affirmed on the basis that § 83.4 violated procedural due process by creating an impermissible irrebuttable presumption. The Commonwealth Court reasoned that the interest of the Department in protecting the physical well-being of the public was outweighed by a licensee's interest in his/her operating privileges, especially in light of the minimal added burden to the Commonwealth in litigating such competency issues. This appeal followed.[3, 4]

The Department submits that the Commonwealth Court erred in concluding that a procedural due process analysis was applicable when faced with an "irrebuttable presumption." Instead, the Department submits that the "irrebuttable presumption" doctrine remains one of substantive due process law and that since the one-year disqualification provision at issue here is rationally related to the legitimate state interest of promoting public safety, it satisfies substantive due process standards. The Department argues in the alternative that even assuming the "irrebuttable presumption" doctrine is one of procedural due process, § 83.4(a) does satisfy procedural due process insofar as Appellee had a right to a *de novo* hearing at which he could have presented evidence to rebut the fact that he had an epileptic seizure.

The regulation at issue here, section 83.4, clearly creates an irrebuttable presumption that a person who has had one seizure is incompetent to drive for a period of at least one year following the occurrence of the seizure. Under the regulation, any evidence that may rebut this presumption of incompetency, including medical evidence from the licensee's treating physician, is irrelevant, at least with respect to the period of the one year suspension. The only exceptions to this regulation appear in subsection (c) which pertain to licensees who have a history of either nocturnal seizures or seizures which are accompanied by warning symptoms, neither of which are applicable under the facts of the instant matter.

While we agree with the Commonwealth Court's ultimate conclusion here that § 83.4 creates an impermissible irrebuttable presumption, we disagree with that court's apparent conclusion that the "irrebuttable presumption doctrine" rests upon procedural due process principles. Accordingly, we find it necessary to first address this disagreement, especially in light of the fact that the

---

**3.** Appellee, Clayton, who, at the time of this appeal, had been free from seizures for many years and, thus, had regained his operating privileges, chose not to participate in this appeal. Accordingly, the Department is the only party which filed a brief and argued in this matter.

**4.** Our scope of review of this matter, as it is with any review of questions of law, is plenary. *Phillips v. A–Best Products Co.*, 542 Pa. 124, 130, 665 A.2d 1167 (1995).

Department argues, as well, that only substantive due process is implicated under the "irrebuttable presumption doctrine."

Although acknowledging that prior to the decision in *Michael H. v. Gerald D.,* 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989), none of the decisions of the United States Supreme Court which addressed the "irrebuttable presumption doctrine" definitively stated whether that doctrine rests upon substantive or procedural due process grounds, the Commonwealth Court here determined that five of the justices in *Michael H.* did, indeed, conclude that the procedural due process analysis alone applies when reviewing such presumptions. Even a cursory review of the various opinions in *Michael H.* evinces that such a conclusion is speculative at best. In short, *Michael H.* represents a badly split decision of the United States Supreme Court to which a counting of votes for specific propositions is illusory.[5] Furthermore, as the following review of the key United States Supreme Court decisions involving this doctrine illustrates, the distinction as to whether substantive or procedural due process is implicated is not paramount.

The "irrebuttable presumption doctrine" came into existence in the 1970's via a line of United States Supreme Court decisions as embodied in *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971)(a decision striking down a Georgia statute permitting the state to revoke one's drivers license following an accident without a fault hearing where the driver failed to post security), *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972)(striking down an Illinois statute which conclusively presumed all unmarried fathers to be unfit parents), *Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973) (striking down a Connecticut statute which conclusively fixed a student's residency status as of the time of application for admission) and *Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974) (striking school regulations which required pregnant teachers to take leave without pay be-

ginning five months before the expected birth of their child). As in the instant case, the statutes at issue in those cases involved irrebuttable presumptions created as a means of achieving an end result found desirable by the legislature. In each of those cases, the Court struck down the particular statutes involved on the basis that the presumptions created were not universally true and did not grant an individual the opportunity to rebut the presumption. *Vlandis* was the first decision wherein the Court elucidated the analysis to be applied under the "irrebuttable presumption doctrine." There, the Court held that such irrebuttable presumptions are violative of due process where the presumption is deemed not universally true and a reasonable alternative means of ascertaining that presumed fact are available. *See e.g., Vlandis,* 412 U.S. at 452, 93 S.Ct. at 2236, 37 L.Ed.2d at 71.

Subsequently, in *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), the United States Supreme Court somewhat limited the scope of the "irrebuttable presumption doctrine" as set forth in the *Bell* and *Vlandis* line of cases, but did so explicitly only for types of social welfare legislation similar to that at issue in *Salfi. Id.* at 770–772, 95 S.Ct. at 2469–2470, 45 L.Ed.2d at 542–543. At issue in *Salfi* was a Social Security Act provision which effectively created the presumption that a marriage was fraudulent where it had not lasted for more than nine months prior to the decedent's death. Specifically, the *Salfi* Court found that the analysis employed in the *Vlandis* line of decisions was inapplicable to the type of social welfare legislation at issue there, concluding instead, that to pass constitutional muster, such social welfare legislation need be only rationally based and free from invidious discrimination. *Id.* at 770, 95 S.Ct. at 2469, 45 L.Ed.2d at 541–542. Not insignificantly, however, *Salfi* overruled none of the above-referenced prior decisions of the Court wherein a challenge to a conclusive presump-

---

**5.** Moreover, the heart of the controversy in *Michael H.* focused on whether there exists a constitutionally protected relationship between a natural father and his child so as to implicate due

process. As will be addressed *infra,* the law is well settled that the interest at stake in the instant matter enjoys constitutionally protected status.

tion was sustained upon application of the analysis enunciated in *Vlandis*.[6]

■ For purposes of the present controversy, it is important to note that none of these decisions of the Supreme Court prior to *Michael H.* even discussed whether the analysis being employed was strictly substantive or that of procedural due process. Indeed, it may be that an analysis of such presumptions by its very nature eludes such precise cataloguing. The presumption, it seems, is the *substance* of the statute or regulation at issue, which presumption necessarily implicates *process* given its conclusiveness. For these reasons, then, we find the Commonwealth Court's limitation of its discussion as to the precise due process principle at issue under this doctrine to be not only unnecessary but also ill advised. While we do not believe it wise to pigeonhole whether an analysis of an irrebuttable presumption is solely one of substantive or procedural due process, the Commonwealth Court here nevertheless properly relied upon *Bell, supra* in reaching its decision that the presumption contained in § 83.4 was violative of due process because it precluded that class of licensees adequate process. The United States Supreme Court's decision in *Bell, supra,* which remains valid precedent, is directly on point in the instant matter and, indeed, is dispositive.

This court recently cited *Bell* for the proposition that it is beyond peradventure that procedural due process must be met before one's operating privilege can be revoked or recalled. *See Pennsylvania Game Commission v. Marich and Engleka,* 542 Pa. 226, 666

A.2d 253 (1995). As the United States Supreme Court in *Bell* stated:

> Once licenses are issued, as in petitioner's case, their continued possession may become essential in the pursuit of livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment. This is but an application of the general proposition that relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a "right" or a "privilege."

*Bell,* 402 U.S. at 539, 91 S.Ct. at 1589, 29 L.Ed.2d at 94 (*citations omitted*).

■ While procedural due process is a flexible notion which calls for such protections as demanded by the individual situation, the essential requisites are notice and meaningful opportunity to be heard. *Soja v. Pennsylvania State Police,* 500 Pa. 188, 194, 455 A.2d 613, 615 (1982)("the essential elements of due process are notice and opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case before a tribunal having jurisdiction of the cause"); *see also, Bell, supra.* Due process requires not just "*any*" hearing, but rather an "*appropriate*" hearing. *Fiore v. Commonwealth of Pennsylvania, Board of Finance and Revenue,* 534 Pa. 511, 516, 633 A.2d 1111, 1114 (1993). With respect to the nature of procedural due process required, the United States Supreme Court in *Bell* stated:

---

**6.** Similar legislative presumptions affecting welfare classifications and standards of need have also been upheld by the United States Supreme Court upon application of an analysis similar to that set forth in *Salfi*. *See, e.g. Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *Califano v. Jobst,* 434 U.S. 47, 98 S.Ct. 95, 54 L.Ed.2d 228 (1977); and *Califano v. Aznavorian,* 439 U.S. 170, 99 S.Ct. 471, 58 L.Ed.2d 435 (1978). The irrebuttable presumption doctrine continues, however, to be in force as evidenced by post-*Salfi* decisions. *See, e.g. Turner v. Department of Employment Security,* 423 U.S. 44, 96 S.Ct. 249, 46 L.Ed.2d 181 (1975). Moreover, *Bell* and its progeny has been applied by federal as well as state courts

since *Salfi* to strike down statutes and/or regulations as violative of due process which, similar to here, contained irrebuttable presumptions affecting other than economic or social welfare reform. *See, Catlin v. Sobol,* 881 F.Supp. 789 (1995); *Horton v. Marshall Pub. Schools,* 769 F.2d 1323 (1985); *Steven M. v. Gilhool,* 700 F.Supp. 261 (E.D.Pa.1988); *In the Matter of Percy Johnson v. Director, Downstate Medical Center,* 52 A.D.2d 357, 384 N.Y.S.2d 189 (1976). *See also, Edelberg et al. v. The Illinois Racing Board,* 540 F.2d 279 (1976) (citing *Bell v. Burson* for the proposition that the Constitution limits state power to terminate an entitlement whether the entitlement is denominated a right or privilege, but distinguishing the case there from *Bell* on the basis that the state in *Edelberg* was not seeking to

The hearing required by the Due Process Clause must be "meaningful" and "appropriate to the nature of the case." It is a proposition which hardly seems to need explication that a hearing which excludes consideration of an element essential to the decision whether licenses of the nature here involved shall be suspended does not meet this standard.

*Bell* at 542, 91 S.Ct. at 1591, 29 L.Ed.2d at 96 (*citations omitted*).

*Bell* is particularly instructive here insofar as the United States Supreme Court in *Bell* addressed the issue of whether a similar irrebuttable presumption violated procedural due process. More specifically, the Court there addressed a due process challenge to a Georgia statute which provided for the suspension of an uninsured driver's license and registration where the licensee had been involved in an accident and failed to post security to cover the amount of damages claimed by the aggrieved party. The due process challenge in *Bell* focused on the fact that although an administrative hearing was permissible under the statutory scheme, the uninsured motorist was not permitted, at any such hearing, to submit proof that he or she was not liable for the accident. The Court found this particular statutory scheme violative of due process. Specifically, the Court held that before the state could suspend such person's license and registration, procedural due process required a determination as to whether there was a reasonable probability that the uninsured licensee would ultimately be found liable. The Court reasoned that the government's interest in protecting a claimant from the possibility of an unrecoverable judgment did not justify denying the uninsured licensee the process due him or her where there was no reasonable chance of a judgment being rendered against the licensee. The Court also determined that the additional expense associated with an expanded hearing did not justify denying the licensee a hearing meeting the ordinary standards of due process. *See, Bell* 402 U.S. at 540–41, 91 S.Ct. at 1590, 29 L.Ed.2d at 95.

As noted above, the Department submits that procedural due process was, indeed, satisfied in the instant matter insofar as Appellee had a right to a *de novo* hearing before the court of common pleas regarding the recall of his license at which hearing he could have presented evidence to rebut the fact that he had a seizure. However, given the nature of the matter currently before the courts, it cannot be gainsaid that any "meaningful" opportunity to be heard would here require that the licensee be permitted to present objections, not to the conclusion that he had suffered an epileptic seizure, but rather to the presumption of incompetency to drive. *See, Bell, supra.* While Appellee indeed had a forum in which to assert his claim that he was competent to drive, that forum was rendered meaningless as a result of the irrebuttable presumption of § 83.4(a) since under that regulation, the recall of Appellee's license was a foregone conclusion. Such a meaningless hearing certainly does not comport with even the minimal standards afforded under due process.

The real thrust of the Department's argument is that because the Medical Advisory Board has deemed persons who have suffered even one epileptic seizure unsafe to drive, that determination should remain inviolate. Clearly, precluding unsafe drivers, even those who are potentially unsafe drivers, from driving on our highways is an important interest. But, it is not an interest which outweighs a person's interest in retaining his or her license so as to justify the recall of that license without first affording the licensee the process to which he is due. Indeed, since competency to drive is the paramount factor behind the instant regulations, any hearing which eliminates consideration of that very factor is violative of procedural due process.[7] *See, Bell, supra.*

Accordingly, for all the foregoing reasons, we affirm the decision of the Commonwealth Court.

suspend a license, but rather merely creating a condition of entitlement).

**7.** We note that with respect to all other medical conditions, but those relating to visual standards, the regulations adopted pursuant to 75 Pa.C.S. § 1517 premise the recall of the operating privileges of a person afflicted with any such condition upon the opinion of that licensee's treating physician. *See* 67 Pa.Code § 83.5.

NIX, Former C.J., and MONTEMURO, J., who was sitting by designation, did not participate in the decision of this case.

ZAPPALA, J., files a dissenting opinion.

ZAPPALA, Justice, dissenting.

I believe the majority's discussion of the irrebuttable presumption "doctrine" evidences the confused state of the law and demonstrates the shallowness and incompleteness of that "doctrine" as an analytic tool.[1] Merely by categorizing the regulation in question as an irrebuttable presumption, the majority apparently deems it unnecessary to address one of the foundational rules of statutory construction: the presumption of constitutionality. As recognized in statutory and case law, enactments of the General Assembly enjoy a strong presumption of constitutionality and they are not to be found unconstitutional unless they clearly, palpably and plainly violate the constitution. 1 Pa. C.S. § 1922(3); *Commonwealth v. Nicely,* 536 Pa. 144, 638 A.2d 213 (1994). Administrative regulations adopted pursuant to a grant of authority from the legislature, which are within the scope of the authority granted, are entitled to the same presumption, and the party challenging such laws or regulations bears a heavy burden of proving a clear constitutional violation.

In similar fashion, the irrebuttable presumption analysis also conveniently avoids the policies underlying traditional equal protection analysis, i.e., that except where classifications interfere with fundamental rights or disadvantage a suspect class they will be upheld if the means employed are rationally related to the purpose. Legislation by its nature requires the drawing of distinctions and these distinctions need not make allowance for individual circumstances in order to be valid. Apart from the assertion that the regulation creates an irrebuttable presumption, the licensee's argument here is essentially that he is being treated differently from other drivers (is being denied equal protection) because of the occurrence of an epileptic seizure. I believe the Department has demonstrated a rational basis for the regulation.

The General Assembly has established a Medical Advisory Board to "formulate rules and regulations for adoption by the department on physical and mental criteria ... relating to the licensing of drivers...." 75 Pa.C.S. § 1517(b). The rule in question at 67 Pa.Code § 83.4(a) is such a regulation. The Medical Advisory Board made an administrative judgment that the risk to the public from possible recurrence of an epileptic seizure within one year was significant enough to warrant a limited interference with a private interest in maintaining a driver's license. The Department asserts that this period was deemed necessary "to ascertain the effectiveness of any anti-seizure medication which a licensee might have been prescribed, and to determine whether the licensee will be subject to the onset of further seizures." Appellant's Brief at 15–16.

Apart from lack of clarity in the analysis, I am also concerned about the lack of clarity in the outcome. It is simply not enough to state that the regulation violates due process. The majority apparently concludes that due process requires that the licensee be afforded a hearing at which an individualized determination of competency to drive can be made before the license can be recalled. Given the significant danger to the public, I would think that in these circumstances the Department should be permitted to recall or suspend the license first, until it is determined

---

1. The majority addresses the irrebuttable presumption "doctrine" in terms of procedural or substantive due process, suggesting that it matters not which. In a case that bears a striking resemblance to this one, *Commonwealth, Department of Transportation v. Slater,* 75 Pa.Cmwlth. 310, 462 A.2d 870 (1983), a school bus driver's license was suspended pursuant to a regulation making it a condition of holding such a license that a person have no history or diagnosis of diabetes requiring use of insulin or hypoglycemic medication. Commonwealth Court rejected the driver's irrebuttable presumption argument and suggested that the irrebuttable presumption "doctrine" was a permutation of *equal protection* analysis that had limited application. See 462 A.2d at 876–881. Nothing about the most recent case from the United States Supreme Court wherein the irrebuttable presumption concept was discussed, *Michael H. v. Gerald D.,* 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989), suggests that the vitality of the doctrine or the rationale behind it are any clearer now than they were when *Slater* was decided.

that the licensee is not at risk of having another seizure. The majority also fails to address the obvious question of who bears the burden of proof at any hearing. If the flaw in the regulation is that the presumption is irrebuttable, it would seem that a rebuttable presumption would satisfy the majority's concerns. The Medical Advisory Board's assessment of the risks, favoring suspension, would then be the starting point and the licensee would bear the burden of demonstrating by competent evidence that in his particular case those risks have been adequately minimized. Accordingly, I dissent.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

### ORDER

PER CURIAM:

Appeal dismissed as having been improvidently granted.

CAPPY and NIGRO, JJ., dissent.

**Dolores L. ROSS, Appellant**

v.

**SOCIETY HILL TOWERS, Eastern Engineering & Elevator Company and Otis Elevator Company.**

Supreme Court of Pennsylvania.

Argued Oct. 15, 1996.

Decided Nov. 8, 1996.

Lawrence D. Finney, Philadelphia, for Dolores L. Ross.

Kean K. McDonald, Jeffrey D. Hutton, Philadelphia, for Society Hill Towers.

William V. Coleman, Thomas Finarelli, Philadelphia, for Otis Elevator.

Kevin J. Connors, Philadelphia, for Eastern Engineering Co.

**In re Daniel M. PREMINGER, Esq.**

**Appeal of COMMONWEALTH of Pennsylvania.**

Supreme Court of Pennsylvania.

Argued Oct. 16, 1996.

Decided Nov. 8, 1996.

Thomas D. Schneider, for Com.

David M. McGlaughlin, Philadelphia, for Daniel Preminger.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.