**James P. DARE,**

v.

**COMMONWEALTH of Pennsylvania, Department of Transportation, Bureau of Driver Licensing, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 21, 1996.
Decided Aug. 26, 1996.

---

pleas court judges was increased after Eakin took office.

8. Disposition of issue two is discussed in footnote 5.

Marc A. Werlinsky, Assistant Counsel, and Timothy P. Wile, Assistant Counsel In–Charge, for Appellant.

Joseph M. Kecskemethy, for Appellee.

Before DOYLE and FLAHERTY, JJ., and LORD, Senior Judge.

DOYLE, Judge.

The Commonwealth of Pennsylvania, Department of Transportation (Department) appeals an order of the Court of Common Pleas of Butler County which sustained James Dare's appeal of the Department's recall of his driving privilege.

By letter dated and mailed on May 4, 1995, the Department notified Dare that his operating privilege was being recalled under Section 1519(c) of the Motor Vehicle Code (Code), 75 Pa.C.S. § 1519(c), which provides that "[t]he department shall recall the oper-

ating privilege of any person whose incompetency to drive has been established." [1]

The Department's recall decision was made pursuant to the Department's visual standards set forth in 67 Pa.Code § 83.3 which provide in pertinent part:

> (d) *Vision requirements.* A person shall have a combined field of vision of at least 140 [degrees] in the horizontal meridian, excepting the normal blind spots.

> (e) *Sight in one eye.* A person may be adequately sighted in only one eye and still meet the requirements of this section; however, the person's driving privilege will be restricted to vehicles having mirrors so located as to reflect to the person a view of the highway for a distance of at least 200 feet to the rear.

In the instant case, an examination of Dare by an optometrist revealed that Dare is sighted only in his left eye and that his field of vision is less than 140 degrees in the horizontal meridian, except for the normal blind spots. (Report of Eye Examination, 4/20/94; Reproduced Record (R.R.) at 38a.)

Dare appealed his suspension to the Court of Common Pleas of Butler County which held a *de novo* hearing. The trial court sustained Dare's appeal, reasoning as follows:

> After hearing testimony of [Dare] and arguments of counsel, the Court finds that [Dare] is sighted only in his left eye having lost the use of the right eye at the age of 6 or 7 years. Further, the Court finds that [Dare] has been a licensed automobile driver since age 17 and that he was a licensed automobile driver in the Commonwealth prior to 1970 and has been licensed in Pennsylvania since 1974. Further, the Court finds that [Dare's] driving privileges have always been restricted to vehicles having rear view mirrors. [Dare's] appeal

---

1. Section 1519(c) provides in full:

   **Recall of operating privilege.**—The department shall recall the operating privilege of any person whose incompetency has been established under the provisions of this chapter. The recall shall be for an indefinite period until satisfactory evidence is presented to the department in accordance with regulations to establish that such person is competent to drive a motor vehicle. Any person aggrieved by recall of the operating privilege may appeal in the manner provided in section 1550 (relating to judicial review).

   75 Pa.C.S. § 1519(c).

is herewith sustained and the recall of his driving privileges is set aside.

(9/12/95 Order of the Court of Common Pleas of Butler County at 1–2.)

Significantly, the trial court did not find that Dare's field of vision was greater than 140 degrees in the horizontal meridian. The instant appeal followed.

■ On appeal, the Department argues that the trial court erred in sustaining Dare's appeal because the uncontradicted evidence established that Dare failed to meet the minimum vision standards of licensees as set forth in the Department's regulations found at 67 Pa.Code § 83.3. Dare does not dispute that he does not have the requisite combined field of vision of at least 140 degrees in the horizontal meridian, excepting the normal blind spots. Instead, he argues that 67 Pa. Code § 83.3 is not a *per se* incompetency standard, but rather sets forth *factors* to be used by the court of common pleas which has discretion to determine whether a sight-impaired licensee is incompetent to drive.

To determine the validity of the Department's argument on appeal, we turn first to the language of the enabling legislation found at Section 1504(c) of the Code, 75 Pa.C.S. § 1504(c), authorizing the Department to promulgate its regulations, which states:

(c) **Qualifications of applicants.**—The department shall establish by regulation the qualifications necessary for the safe operation of the various types, sizes or combinations of vehicles and the manner of examining applicants to determine their qualifications for the type or general class of license applied for.

Additionally, Section 1517 of the Code establishes a Medical Advisory Board (MAB) charged with the task of formulating "rules and regulations for adoption by the department on physical and mental criteria including vision standards relating to the licensing of drivers...." 75 Pa.C.S. § 1517(b).

■ Thus the visual standards in 67 Pa. Code § 83.3 which are the Department's regulatory adoption of the MAB's vision criteria, *see Department of Transportation, Bureau of Traffic Safety v. Liberati,* 80 Pa.Cmwlth. 519, 472 A.2d 741 (1984), were promulgated under an express grant of legislative power, and, therefore, this regulation has the force and effect of a statute. *Department of Transportation, Bureau of Traffic Safety v. Slater,* 75 Pa.Cmwlth. 310, 462 A.2d 870 (1983).[2]

Section 1504(c) of the Code directs the Department to promulgate "the *qualifications* necessary for the safe operation of the various types, sizes or combinations of vehicles...." In interpreting this language, we are mindful that pursuant to Section 1903(a) of the Statutory Construction Act, 1 Pa.C.S. § 1903(a), we must construe nontechnical words and phrases according to their common approved usage. Applying this principle of statutory construction to the language of Section 1504(c), we find that "qualification" is commonly defined as "a condition precedent that must be complied with (as for the attainment of a privilege)." Webster's Third New International Dictionary (1986). Because the Legislature granted the Depart-

---

**2.** In *Pennsylvania Human Relations Commission v. Uniontown Area School District,* 455 Pa. 52, 76–78, 313 A.2d 156, 169 (1973), our Supreme Court explained:

There is a well-recognized distinction in the law of administrative agencies between the authority of a rule adopted by an agency pursuant to what is denominated by the textwriters as *legislative* rule-making power and the authority for a rule adopted pursuant to *interpretative* rule-making power. The former type of rule 'is the product of an exercise of legislative power by an administrative agency, pursuant to a grant of legislative power by the Legislative body,' and 'is valid and is as binding upon a court as a statute if it is (a) within the granted power, (b) issued pursuant to proper procedure, and (c) reasonable.' K.C. Davis, 1 Administrative Law Treatise § 5.03, at 299 (1958)....

An interpretative rule on the other hand depends for its validity not upon a *law*-making grant of power, but rather upon the willingness of a reviewing court to say that it in fact tracks the meaning of the statute it interprets. While courts traditionally accord the interpretation of the agency charged with administration of the act some deference, the meaning of a statute is essentially a question of law for the court, and, when convinced that the interpretative regulation adopted by an administrative agency is unwise or violative of legislative intent, courts disregard the regulation. (Footnote omitted; citations omitted.)

ment the power to establish "qualifications," rather than just "factors," we conclude, based upon the plain meaning of the term, "qualifications," that the General Assembly contemplated that the Department standards would contain condition precedents, or minimum thresholds, with which a licensee must comply in order to be a competent driver.

Dare argues, however, that even if the Department's regulations are minimum requirements, an individual, such as himself, who is sighted only in one eye, need **only** meet the rear view mirror requirement of subsection (e) of the Department's visual standards in order to be competent to drive under the Code. Therefore, according to Dare, it is not relevant that Dare cannot meet the field of vision requirement of subsection (d).

Subsection (e) provides:

(e) *Sighted in one eye.* A person may be adequately sighted in only one eye and still meet the requirements of *this section;* however, the person's driving privilege will be restricted to vehicles having mirrors so located as to reflect to the person a view of the highway for a distance of at least 200 feet to the rear.

67 Pa.Code § 83.3(e) (emphasis added).

Again, looking at the plain language of this subsection, it is clear that subsection (e) only provides that sight in one eye, alone, will not preclude an individual from meeting the visual standards. Rather, if such a person *meets the requirements set forth in Section 83.3, including subsection 83.3(d),* **and** restricts his or her driving to vehicles which have adequate rear view mirrors, then he or she may be found competent to drive. There is simply no language in this subsection allowing an individual sighted in one eye only, who uses rear view mirrors, to be excused from meeting the requirements of (a) through (f) of the visual standards set forth in Section 83.3. Clearly, such an interpretation of subsection (e) is not only contrary to its plain language but is also illogical in light of the

legislative intent to empower the Department to promulgate *qualifications* necessary for the safe operation of motor vehicles. Accordingly, we conclude that the field of vision requirement of subsection (d) is applicable to Dare.[3]

Where a licensee has appealed the recall of his or her operating privilege, it is the Department's burden to prove by a preponderance of the evidence that the licensee was incompetent to drive under the terms of the Code. *Klotz v. Commonwealth,* 77 Pa. Cmwlth. 134, 465 A.2d 113 (1983). In the instant case, the unrefuted evidence established that Dare failed to meet the vision requirement that "[a] person shall have a combined field of vision of at least 140 [degrees] in the horizontal meridian, excepting the normal blinds spots" of 67 Pa.Code § 83.3(d), and, therefore, that Dare was incompetent to drive under the Code.

Because the Department had established Dare's incompetency, the burden shifted to Dare to establish that he was competent to drive *in accordance with the Department's regulations. See* 75 Pa.C.S. § 1519(c).[4] As Dare failed to present *any* evidence that he met the Department's visual standards, we conclude that the court of common pleas erred in sustaining Dare's appeal of the recall of his license. Accordingly, we reverse the trial court's order and reinstate the Department's recall of Dare's driving privilege.

### *ORDER*

NOW, August 26, 1996, the order of the Court of Common Pleas of Butler County in the above-captioned matter is hereby reversed.

---

**3.** We note that there is no reason to doubt that a single sighted person can qualify under the requirements of Section 83.3(d); no evidence was presented and no argument was made to the contrary.

**4.** For the text of 75 Pa.C.S. § 1519(c), see *supra* note 1.