**John J. BYERS, Jr., Appellant,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 7, 1999.

Decided July 26, 1999.

---

Robert P. Fulton, Glenside, for appellant.

Elaine N. Blass, Asst. Counsel, and Timothy P. Wile, Asst. Counsel In-Charge, for appellee.

Before FRIEDMAN, J., LEADBETTER, J., and LORD, Senior Judge.

LORD, Senior Judge.

John J. Byers, Jr. appeals an order of the Court of Common Pleas of Montgomery County upholding the Department of Transportation, Bureau of Driver Licensing's (Department) suspension of Byers' driving privileges.

Byers, at 72 years of age, has been licensed to operate a motor vehicle for over forty years. Byers has lived his entire adult life with a condition, retinitis pigmentosa, which substantially impairs his field of vision.[1] Having had this impairment for almost sixty years, Byers insists he has adapted his driving to minimize the effects of his disability.

By official notice dated October 18, 1996, the Department notified Byers that his operating privileges were being recalled because medical records submitted to the Department indicated he possessed a medical condition that "was not compatible with the safe operation of a motor vehicle." (Department of Transportation Letter of Recall, October 18, 1996). The Department suspended Byers' operating privileges pursuant to Section 1519(c) of the Vehicle Code, 75 Pa.C.S. § 1519(c) which provides for the recall of the operating privilege of any person whose

incompetency has been established under the provisions of this chapter. The recall shall be for an indefinite period of time until satisfactory evidence is presented to the department *in accordance with regulations* to establish that such person is competent to drive a motor vehicle.

(*emphasis added*). The specific regulations pertaining to vision are found at 67 Pa.Code § 83.3; Section 83.3(d) requires a driver to have a combined field of vision of "at least 140 degrees in the horizontal meridian, excepting normal blind spots." Byers does not dispute not possessing the requisite field of vision.

On November 18, 1996, Byers appealed the recall of his license to the Court of Common Pleas of Montgomery County. A hearing was held *de novo* on August 31, 1998. At the hearing, Byers maintained that he successfully adapted to his disability and should be allowed to bring forth evidence demonstrating his competency to operate a motor vehicle, despite not meeting the regulatory field-of-vision qualification (N.T. at pp. 24–25).[2] In response, the Department argued that the trial court

---

1. Byers first became aware of his condition during World War II when he was informed that he was "night-blind." Twenty five years later he was formally diagnosed with retinitis pigmentosa, of which night-blindness is a symptom. (Notes of Testimony, N.T., August 31, 1998 hearing, p. 19)

2. Byers alleges to have adapted to his condition by anticipating conditions and situations in front of him and by constantly looking in both directions to compensate for his lack of peripheral vision. (N.T. at p. 24)

must limit its consideration solely to whether Byers' field of vision meets the requirements of 67 Pa.Code § 83.3(d), as set forth above. (N.T. at pp. 16–17).

The trial court denied Byers' appeal by Order dated October 13, 1998. The trial court, relying on our decision in *Dare v. Department of Transportation, Bureau of Driver Licensing*, 682 A.2d 413 (Pa. Cmwlth.1996), held that a driver is deemed unqualified *per se* if uncontradicted evidence establishes that the driver does not meet the combined field-of-vision requirement. Once a driver is deemed unqualified *per se*, the trial court is barred from considering all other evidence of competency. *Commonwealth v. Byers*, (No. 96–20228, filed January 6, 1999). Byers alleges this standard to be a violation of his due process rights.

■ On appeal from a *de novo* hearing, our scope of review is limited to a determination of whether the trial court based its findings of fact on substantial evidence or committed an error of law. *Department of Transportation, Bureau of Driver Licensing v. Webb*, 139 Pa.Cmwlth. 1, 590 A.2d 28, 29 (1991), *alloc. denied*, 529 Pa. 661, 604 A.2d 252 (1992). The facts, as set forth above, are uncontested. Hence, we are left to determine whether the vision standards as set forth in 67 Pa.Code § 83.3(d) deprived Byers of due process of law.

■ Due process requires that Byers be permitted notice and an opportunity to be heard. *Department of Transportation v. Clayton*, 546 Pa. 342, 684 A.2d 1060, (1996) *citing Soja v. Pennsylvania State Police*, 500 Pa. 188, 199, 455 A.2d 613, 615 (1982). In *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), the United States Supreme Court held that the requirements of procedural due process must be met before a driver's operating privileges can be revoked. *Id.*, 402 U.S. at

539, 91 S.Ct at 1589. In applying the holding of *Bell*, the Pennsylvania Supreme Court in *Clayton* addressed the requirements of due process under Section 1517 of the Vehicle Code. 75 Pa.C.S. § 1517, *Clayton*, 546 Pa. 342, 684 A.2d 1060 (1996). The Supreme Court stated that "competency to drive is the paramount factor behind the instant regulations, any hearing which eliminates consideration of that very factor is violative of procedural due process." *Id.*, 546 Pa. at 353, 684 A.2d at 1065. In *Clayton*, the Department, in accordance with 67 Pa.Code § 83.4,[3] revoked the license of a driver who had suffered a seizure. At the hearing, the licensee was denied the opportunity to present medical evidence establishing his competency to drive. The precise harm the regulation sought to prevent was the danger presented by a driver having a seizure while operating a motor vehicle. However, by prohibiting the driver from offering evidence that the condition no longer existed until a full year had elapsed, the statute in effect barred him from demonstrating freedom from the impairment. The Supreme Court held this to be a violation of due process and remanded the case so that a hearing could be held as to the driver's competence. *Id.*, 546 Pa. at 353, 684 A.2d at 1065. The Supreme Court stated as follows.

[G]iven the nature of the matter currently before the courts, it cannot be gainsaid that any 'meaningful' opportunity to be heard would here require that the licensee be permitted to present objections, not to the conclusion that he had suffered an epileptic seizure, but rather to the presumption of incompetency to drive. While Appellee indeed had a forum in which to assert his claim that he was competent to drive, that forum was rendered meaningless as a result of the irrebuttable presumption of § 83.4(a) since under that regulation, the recall of Appellee's license was a

---

**3.** 67 Pa.Code § 83.4 required that a person with epilepsy "not drive unless their personal licensed physician reports that the person has been free from seizure for at least 1 year immediately preceding, with or without medication."

foregone conclusion. Such a meaningless hearing certainly does not comport with even the minimal standards afforded under due process.

The real thrust of the Department's argument is that because the Medical Advisory Board has deemed persons who have suffered even one epileptic seizure unsafe to drive, that determination should remain inviolate. Clearly, precluding unsafe drivers, even those who are potentially unsafe drivers, from driving on our highways is an important interest. But, it is not an interest which outweighs a person's interest in retaining his or her license so as to justify the recall of that license without first affording the licensee the process to which he is due. Indeed, since competency to drive is the paramount factor behind the instant regulations, any hearing which eliminates consideration of that factor is violative of procedural due process.

*Id.*, 546 Pa. at 353, 684 A.2d at 1065 (*citations omitted*).

Although the Supreme Court made it clear that countervailing proof of competency must be allowed to rebut the incompetency presumption created when certain medical conditions are reported, we do not read the *Clayton* decision as degrading *all* qualifications promulgated by the Department's regulations to the status of guidelines. Otherwise, carried to its logical extreme, the argument that *Clayton* stands for such a proposition would allow those without any capacity to see to argue their competency to drive. Rather, as said above, *Clayton*, struck down a regulation which deprived a driver of the opportunity to prove he was no longer impaired by a medical condition having temporary, controllable manifestations.

 Here, by contrast, and like the minimum sight distance requirements also governed by § 83.3(a), (b) & (c), Byers' condition is constant, objectively measurable and, unless proven otherwise, permanent. It must also be recognized that in *Clayton*, the licensee was not attempting to prove competency by offering evidence of adaptation to his condition. Rather, the licensee there attempted to offer evidence that his condition was ameliorated. Our decision today, that the Department regulation of Pa.Code § 83.3(d) does not violate due process, is in accord with principles articulated in *Clayton*. The regulation in question here requires merely that an individual possess certain minimum visual requirements to operate a motor vehicle, much like minimum age requirements. Unlike the regulation in *Clayton*, Section 83.3(d) does not create a procedural bar to due process by requiring the driver to wait a period of time before proving his competency to drive. Rather, it establishes a "standard," as we said in *Dare*, that "contain[s] condition precedents, or minimum thresholds, with which a licensee must comply in order to be a competent driver." *Dare*, 682 A.2d at 416.

We must now determine whether Byers was competent to operate a motor vehicle in light of the regulation. In *Dare*, we faced a similar question. In that case, the driver failed to meet the requisite field-of-vision requirement of 67 Pa.Code § 83.3(d). Dare had been licensed in the state of Pennsylvania since 1974. In 1995, the Department recalled his license for failing to meet the field of vision requirement. Dare argued on appeal that Section 83.3 did not set forth a *per se* incompetency standard. *Id.*, 682 A.2d at 415. Therefore, the court had discretion to determine whether a sight-impaired licensee was competent to drive. *Id.*, 682 A.2d at 415. We rejected Dare's argument, holding that Dare was restricted to a presentation of evidence demonstrating his competency to drive, *"in accordance with the regulation."* *Id.*, 682 A.2d at 416 (emphasis in original). In other words, Dare was restricted to a presentation of objective evidence showing that the Department's report of his field-of-vision measurement was incorrect.

 Applying our holding in *Dare*, once the Department established Byers

incompetence to drive, due process required that Byers be given the opportunity to demonstrate objectively that his vision was sufficient to meet the regulatory requirements. Evidence of adaptation was not relevant to a determination of competence under this regulation, and was properly excluded from the trial court's consideration.

For the reasons set forth above, we affirm the decision of the trial court.

## ORDER

AND NOW, this 26th day of July, 1999, the order of the Court of Common Pleas of Montgomery County in the above captioned matter is affirmed.