IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dustin Z. Slaweski, : 
                 Petitioner : 
                  : 
       v. : 
                  : 
Department of Transportation, : 
Bureau of Driver Licensing, : No. 171 C.D. 2014
            Respondent : Submitted: July 3, 2014


BEFORE:   HONORABLE DAN PELLEGRINI, President Judge
             HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


OPINION BY
PRESIDENT JUDGE PELLEGRINI       FILED: July 23, 2014


       Dustin Z. Slaweski (Slaweski) petitions for review of an order of the Pennsylvania Department of Transportation (Department) denying in part his exceptions to the Department Hearing Officer's proposed report finding that Slaweski did not meet the minimal visual-safety standards set forth in 67 Pa. Code §83.3 and, therefore, denying his request to restore his license. For the reasons that follow, we affirm the Department's order.


**I.**

       The following facts are not in dispute. In April 2010, the Department's Bureau of Driver Licensing (Bureau) recalled Slaweski's driver's license after receiving information from his doctor that he was unable to comply with the peripheral-vision requirements set forth in 67 Pa. Code §83.3(e) due to a

medical condition.[1]    Slaweski began treating with Ranjoo Prasad, O.D., (Dr. Prasad) an optometrist, who administered the Goldmann Perimetry test[2] in March 2011 upon Slaweski's left and right eyes, individually (monocularly), and upon both eyes simultaneously (binocularly).  The test yielded a baseline result showing a combined, maximum field of vision of 97 degrees.  In April 2011, Dr. Prasad administered the test again, this time testing only binocularly and permitting Slaweski to use a Fresnel prism[3] and "scanning."[4]  Following the examination, Dr. Prasad issued a report concluding, "Dustin Slaweski's total binocular ( both eyes ) [*sic*] horizontal visual field was measured to be approximately 125 degrees, (85 degrees left and 45 degrees right), using a 25 prism diopter, Fresnel prism placed temporally over the right lens of his glasses."  (Certified Record [C.R.] Exhibit 9, at 7-1.)  In another report dated May 2011, Dr. Prasad added, "With the prism,

---

[1] 67 Pa. Code §83.3(e) provides, "A person shall have a combined field of vision of at least 120° in the horizontal meridian, excepting the normal blind spots."  Slaweski did not appeal the recall of his license, but rather sought medical treatment to resolve his visual deficiency.  In November 2010, he provided the Bureau with a medical report indicating that his combined field of vision totaled less than 120 degrees in the horizontal meridian.

[2] The Goldmann Perimetry test is a dynamic field-of-vision test whereby light emerges from behind the subject, and the subject presses a button to indicate when he first sees light in his peripheral vision.  (Reproduced Record [R.R.] at 9a–10a, 14a.)

[3] A Fresnel prism is "a plastic stick-on prism that bends light and when placed on your glasses with the base…[i]t bends the light towards your central vision and it allows you to be more aware by scanning into the field."  (*Id.* at 31a.)

[4] "Scanning" describes "rapid eye movements into the direction of your field loss."  (*Id.* at 32a.)  It "means moving your eye into the prism where it's placed on your glasses and recognizing objects that are in that field loss, in that area of loss…where the Fresnel is positioned."  (*Id.*)

[Slaweski] meets Pennsylvania's visual standards of 120 degrees combined visual field for driving." (*Id.* at 7-5.)

In November 2012, Dr. Prasad administered the Goldmann Perimetry test binocularly a third time and permitted Slaweski to use the prism and to scan. This examination yielded a combined, maximum field of vision of 120 degrees. A report followed, advising:

> Dustin Slaweski's total combined binocular ( both eyes ) [*sic*] horizontal visual field was measured to be 120 degrees, (80 degrees left and 40 degrees right), using a 20 prism diopter…prism placed temporally over the right lens of his glasses, and with scanning….
>
> * * *
>
> With the prism, he meets Pennsylvania's visual standards of 120 degrees combined visual field for driving.

(C.R. Exhibit 9, at 17-1.)  Slaweski requested that the Bureau restore his license and submitted the above-referenced reports in support of his application, which the Bureau ultimately denied.  An administrative hearing before the Department followed.[5]

---

[5] Slaweski asserts that on December 23, 2011, the Bureau orally denied his request. Following the denial, Slaweski filed an appeal in the Court of Common Pleas of Bucks County (trial court), which was dismissed as untimely on the basis that the 30-day appeal period running from the Bureau's April 2010 recall had expired.  Subsequently, Slaweski filed a writ of mandamus and a motion for summary relief in this Court at Docket No. 684 M.D. 2012.  We ordered that the Department hold an administrative hearing on Slaweski's request for restoration for the purposes of creating a record and remanded the matter.

## II.

At the administrative hearing, the Department presented the testimony of Robert L. Owens, O.D., F.A.A.O., (Dr. Owens), a member of the Department's Medical Advisory Board, who assists in evaluating the Department's vision standards and proposes appropriate changes to them, and who was qualified as an expert in the fields of optometry vision standards and motorist vision. He testified that the Goldmann Perimetry test must be administered monocularly rather than binocularly, and that this procedural deficiency, alone, invalidated Slaweski's test results. (R.R. at 10a.) He further stated that the test requires its subject to look straight ahead at a fixed point during the examination and that scanning or "looking from side-to-side," is not permitted. (*Id.* at 10a–11a.) Specifically, he explained that "[s]canning means that you're no longer holding a fixation reference point but moving it towards a different target," and that it invalidates a visual-field test because "[i]f you move your reference point you move the entire visual field. So you can't get an accurate measurement from point one—the zero point if you will, to the full extent. You're shifting the whole peripheral field." (*Id.* at 11a.) On cross-examination, he conceded that 67 Pa. Code §83.3(e) does not specifically preclude scanning or the use of a prism, and that he has not proposed changes to the regulation that would accomplish this end. (*Id.* at 14a.)

Therefore, Dr. Owens concluded that Slaweski did not satisfy the visual-field requirements because they "do not allow any attempt at enhancing the natural peripheral visual field," and "[t]he entire field would move with the scanning of a fixation point. So we have a moving target. We don't have

4

something that we can actually measure the extent. The whole field is changing." (*Id.*) He analogized:

> [Y]ou've got a tape measure and you're trying to measure a section of the board. You have to start with the zero point, stretch the tape measure out, that's its length. If somebody moved the tape measure down it's not the same reference point. You're shifting. You have to have a standard point and you're measuring from that point. If you shift it it's not the same measurement.

(*Id.* at 14a–15a.) Dr. Owens also testified that these principles were standard, medically accepted procedures employed in administering the Goldmann Perimetry test, of which Dr. Prasad should be aware. (*Id.* at 15a.)

In support of his request for restoration, Slaweski presented the testimony of Dr. Prasad, who was qualified as an expert in the field of optometry. Dr. Prasad testified that two different types of the Goldmann Perimetry test exist, one which permits scanning and one which does not. (*Id.* at 19a.) Dr. Prasad stated that the test with scanning is used "to determine how your peripheral visual field can extend or how much they [*sic*] can be further aware of it from a functional standpoint." (*Id.*) Using the prism and scanning, Dr. Prasad testified that Slaweski satisfied the visual-field requirements of 67 Pa. Code §83.3(e). (*Id.*)

On cross-examination, Dr. Prasad conceded that the Goldmann Perimetry test is generally administered monocularly, but stated that because the standard for driving was binocular, the test was administered to Slaweski binocularly. (*Id.* at 20a.) She further admitted that the binocular test yielded a

5

combined, maximum result of 95–97 without scanning, which falls short of the mandated 120 degrees, but she relied on his score with scanning. (*Id.*) When challenged about the procedure she employed, Dr. Prasad testified as follows:

> **Q. And if you're allowing someone to look from side to side while you're conducting a test you're not really testing their [*sic*] peripheral vision; isn't that correct?**
>
> A. Well he's getting to the periphery so I would say yes. But that test is for peripheral vision scanning.
>
> **Q. But if I look to the right I lose my vision to the left; correct?**
>
> A. You'll lose part of your vision to the left; yes.
>
> **Q. Right.**
>
> A. For field—if your field increases that side that you're looking.
>
> **Q. It doesn't increase, it shifts; doesn't it?**
>
> A. I'm sorry. Oh, you're aware of it more. It's more of a peripheral awareness. An increased visual awareness I should say.
>
> **Q. But nonetheless, Mr. Slaweski has 95 degrees field of vision. He may shift that 95 degrees to the right and he may shift that 95 degrees to the left by moving his eyes to the right or to the left. But he continues to have a 95 degree field of vision across the horizontal meridian; is that not correct? Is that correct?**
>
> A. Correct. If he continues to look at the direction; yes.

(*Id.*) Still, Dr. Prasad maintained that when Slaweski scans, he has a minimum, combined field of vision of 120 degrees in the horizontal median. (*Id.*)

6

Following the hearing, the Department's Hearing Officer issued a proposed report and order, recommending that the matter be dismissed because Slaweski "cannot meet minimal visual safety stands [*sic*] as per the applicable regulations." (C.R. Exhibit 14, at 12.)[6] Specifically, the Hearing Officer found that the "accepted medical testing conditions" for the Goldmann Perimetry test require the subject to look at a fixed point, and that Slaweski's use of scanning invalidated his test results because scanning "does not increase the field of vision, but merely shifts it in the direction in which the eyes are focused." (*Id.* at 2–3, 4.) The Hearing Officer further concluded that scanning constituted an adaptation prohibited under *Byers v. Department of Transportation*, *Bureau of Driver Licensing,* 735 A.2d 168 (Pa. Cmwlth. 1999). Noting that Slaweski's March 2011 test yielded a maximum combined field of vision of 97 degrees without scanning, the Hearing Officer found that Slaweski did not satisfy the minimum vision standards.

Slaweski filed exceptions to the proposed report, after which the Secretary of the Department (Secretary) conducted a *de novo* review and denied them on substantive grounds.[7] Relying as the Hearing Officer did on *Byers*, 735

[6] The Hearing Officer also determined that Slaweski's appeal was procedurally deficient because (1) he filed his appeal with the trial court on January 27, 2012, over 30 days after he was orally informed that the Bureau denied his request to reissue his license on December 23, 2011; (2) Slaweski failed to appeal the trial court's determination that his appeal was untimely; and (3) the Bureau's recall notice should have been appealed to the trial court, but instead, Slaweski filed an action with the Commonwealth Court in its original jurisdiction. (C.R. Exhibit 14, at 6–7.) Regardless, these grounds are not presently before us.

[7] The Secretary struck the portion of the Hearing Officer's proposed report which dismissed the matter for procedural reasons, finding that a restoration decision by the Bureau is not appealable until a formal denial has been issued, and because such a formal denial was never **(Footnote continued on next page…)**

7

A.2d 168, the Secretary found that "evidence of adaption, e.g. scanning and use of a prism placed over the right lens of ones [*sic*] glasses during testing, is not relevant to a determination of competence under the regulations." (C.R. Exhibit 16, at 5.) As such, the Secretary adopted the Hearing Officer's report regarding the merits of Slaweski's request, and this appeal followed.[8]

### III.

On appeal, Slaweski contends that the Secretary erred insofar as he denied the exceptions because 67 Pa. Code §83.3(e) does not specifically prohibit scanning, and, therefore, the scores from his tests during which he scanned are valid measurements of his peripheral vision.[9]

---

**(continued…)**

issued, the Department was responsible for the procedural confusion. That portion of the decision has not been challenged.

[8] Our review of an order issued by the Secretary of the Department is limited to determining whether the findings are supported by substantial evidence, whether the agency committed an error of law, whether the procedural provisions of the Administrative Agency Law, 2 Pa. C.S. §§501–508, 701–704, have been complied with, or whether any of the petitioner's constitutional rights have been violated. 2 Pa. C.S. §704; *Realmuto v. Department of Transportation*, 637 A.2d 769, 770 n.1 (Pa. Cmwlth. 1994).

After the Secretary issued his decision, Slaweski discontinued his action at Docket No. 684 M.D. 2012 on the basis that it was moot. Slaweski then filed the instant appeal of the Secretary's order in the nature of a petition for review.

[9] We note that in Slaweski's petition for review, he asserted nine grounds for appeal. Because the remaining grounds are not addressed in Slaweski's brief, they are deemed waived. *See Van Duser v. Unemployment Compensation Board of Review*, 642 A.2d 544, 548 n.3 (Pa. Cmwlth. 1994).

8

While Slaweski is correct that the regulation does not specifically prohibit scanning, scanning is impermissible as it invalidates the very measure 67 Pa. Code §83.3(e) seeks to create. 67 Pa. Code §83.3(e) seeks to ensure that all individuals possessing a driver's license have a minimum, combined peripheral vision of 120 degrees. Slaweski's own treating physician, Dr. Prasad, acknowledged that when Slaweski's sight was fixed on an object, his peripheral vision fell below the mandated 120 degrees. Nonetheless, Slaweski attempts to skirt this requirement by employing scanning, a practice which allows rapid eye movement. As Dr. Owens explained, such a practice invalidates the very purpose of a peripheral-vision test; scanning does not allow peripheral vision to be measured because the subject's eyes are constantly moving and render measurement impossible. Dr. Prasad admitted that when one scans to the right, he loses part of his vision to the left, and although she testified that scanning increased visual awareness, "visual awareness" is not the standard measured under 67 Pa. Code §83.3(e). Indeed, it is undisputed that Slaweski failed to obtain a score of 120 degrees on all tests during which he could not scan.

Moreover, we agree with the Secretary's determination that scanning is an adaptation not properly considered in determining Slaweski's compliance with 67 Pa. Code §83.3(e). *See Byers*, 735 A.2d at 172. In *Byers*, the petitioner suffered from impaired vision for nearly 60 years and had been licensed to operate a vehicle for over 40 years. *Id.* at 169. Although the petitioner did not satisfy the then-applicable minimum peripheral-vision requirement under 67 Pa. Code §83.3, he argued that his driving privileges should not be suspended because he learned how to adapt his driving to minimize the effects of his disability. *Id.* Recognizing

9

that the qualifications promulgated by the Department's regulations are mandatory and not merely advisory, we held that evidence of the petitioner's adaptation "was not relevant to a determination of competence under this regulation." *Id.* at 172.

Similarly, Slaweski seeks to demonstrate his competency by showing that he can achieve the minimum visual standards when he performs the test with an adaptation, i.e., scanning. Because our precedent is clear that adaptations are not relevant, the Secretary properly refuted this evidence.[10] The uncontroverted evidence establishes that without this adaptation, Slaweski is incapable of satisfying the visual requirement.

Accordingly, we affirm the Secretary's order denying in part Slaweski's exceptions to the Department Hearing Officer's proposed report.

_____
DAN PELLEGRINI, President Judge

---

[10] Because Slaweski is unable to satisfy the minimum visual standards without scanning, we need not address his alternate argument that he was permitted to use a prism during his testing.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dustin Z. Slaweski,     :
      Petitioner :
         :
   v.       :
         :
Department of Transportation, :
Bureau of Driver Licensing,  :
     Respondent : No. 171 C.D. 2014

# **O R D E R**

   AND NOW, this 23rd day of July, 2014, the order of the Secretary of the Department of Transportation dated January 28, 2014, at No. 029 A.D. 2013, is affirmed.

             _____
             DAN PELLEGRINI, President Judge