Anthony F. MOSCATO,
M.D., Petitioner

v.

STATE BOARD OF MEDICINE,
Respondent.

Commonwealth Court of Pennsylvania.

Argued Sept. 8, 2008.
Decided Oct. 23, 2008.
Reargument En Banc Denied
Dec. 12, 2008.
Ordered Published Jan. 14, 2009.

James J. Kutz, Harrisburg, for petitioner.

Sabina I. Howell, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, and BUTLER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge BUTLER.

Anthony F. Moscato, M.D. (Dr. Moscato) petitions for review of the November 30, 2007 Final Adjudication and Order of the Department of State, State Board of Medicine (Board) which adopted the decision of the hearing examiner, suspending Dr. Moscato's medical license for two years and requiring him to take a continuing education course on sexual boundary issues.

Dr. Moscato had been licensed to practice medicine for thirty-six years, and had a special interest in chronic pain management, although he was not board certified in any particular field. He met TB[1] on September 30, 2003. Soon after their first date, Dr. Moscato and TB began a romantic and physical relationship, ultimately resulting in their engagement. TB and Dr. Moscato moved in together, and TB eventually started working for Dr. Moscato. When the two met, Dr. Moscato was in the process of divorcing his wife.

As a result of their personal relationship, Dr. Moscato became aware that TB had been diagnosed with bipolar disorder and other mental and physical problems. In particular, TB had chronic pain caused by dental caries and gingivitis. By December 2003, TB had been seen by approximately eleven licensed medical professionals,[2] all of whom eventually refused to continue prescribing her opioids because of the addictive effects of the drugs. At this point, Dr. Moscato discussed with TB the possibility of treating her himself because TB had, in his opinion, failed to secure

---

1. For privacy reasons, the name of the fiancé/patient has been abbreviated.

2. The licensed medical professionals included her original primary care physicians; staff at the Allentown Dental clinic (dental clinic); a private dentist; several Lehigh Valley emergency room personnel; and Dr. Steven Mortazavi, a board-certified pain management specialist and anesthesiologist.

proper treatment for her various conditions and seemed unable to obtain treatment that would alleviate her chronic pain. Dr. Moscato reviewed what he considered the applicable Board regulations and concluded, without consulting legal counsel or the Board, that the regulations permitted him to treat TB because he started his personal relationship with TB prior to starting their physician/patient relationship. The physician/patient relationship officially started on December 12, 2003, at which point he prescribed opioids that he believed TB needed to relieve her chronic pain.

In addition to the treatment TB was receiving from Dr. Moscato for her chronic pain, she started seeing Mary Cohen, M.D. (Dr. Cohen), a physician board-certified in psychiatry and internal medicine, in June 2004 for her bipolar disorder. During Dr. Cohen's treatment of TB, Dr. Moscato communicated with Dr. Cohen on numerous occasions. Dr. Moscato fully disclosed to Dr. Cohen his relationship with TB and the reasons for taking on her care. In turn, Dr. Cohen expressed her concerns with Dr. Moscato treating TB because of the nature of their personal relationship. During Dr. Cohen's treatment of TB, there was an incident in which Dr. Moscato increased TB's dosage of Xanax (an antidepressant prescribed by Dr. Cohen) after Dr. Cohen had refused to do so until she met with TB. This incident, along with Dr. Cohen's belief that Dr. Moscato should have shared information on the medications he was prescribing for TB for consideration of potentially harmful drug interactions with the medications she was prescribing, led Dr. Cohen to believe that

Dr. Moscato was interfering with her treatment of TB. As a result, Dr. Cohen submitted a complaint to the Board out of concern for TB's well-being.

■ In August 2005, a Professional Conduct Investigator, Thomas Olek (Olek), met with Dr. Moscato regarding the allegations of an inappropriate relationship. Dr. Moscato fully revealed his relationship with TB and the circumstances that led to his treatment of her. Dr. Moscato continued treating TB until he received an Order to Show Cause from the Board. In October 2007, a hearing officer concluded that Dr. Moscato's treatment of TB was in violation of Section 41 of the Medical Practice Act of 1985 (Medical Practice Act), Act of December 20, 1985, P.L. 457, *as amended,* 63 P.S. § 422.41 and Section 16.110 of the Board's Regulations, 49 Pa.Code § 16.110, suspended his license for two years and required Dr. Moscato to take a continuing education course on sexual boundaries. Dr. Moscato appealed the hearing officer's decision to the Board, which ultimately affirmed the hearing officer's findings. Dr. Moscato then appealed the Board's order to this Court.[3]

■ Dr. Moscato first argues that Section 16.110(b) of the Board's Regulations, 49 Pa.Code § 16.110(b), which prohibits sexual behavior with a current patient other than his/her spouse, and Section 16.110(c) of the Board's Regulations, 49 Pa.Code § 16.110(c), which prohibits sexual behavior with a patient other than the physician's spouse, being treated for a mental health disorder are unconstitutional under the Equal Protection Clause of the United States[4] and Pennsylvania[5] Consti-

---

**3.** The scope of the Commonwealth Court's review of a decision of the State Board of Medicine is limited to determining whether necessary findings of fact are supported by substantial evidence in the record, and whether there was an error of law or a constitutional violation. *Marrero v. Bureau of Prof'l &*

*Occupational Affairs,* 892 A.2d 854 (Pa. Cmwlth.2005).

**4.** U.S. Const. amend. XIV, § 1.

**5.** Pa. Const. Art. I, § 26.

tutions. He contends that there is no rational basis for distinguishing between the treatment of married and unmarried people. He maintains that he is in a committed relationship with TB and that, if the two had been married when he took over her treatment, he would not be in violation of 49 Pa.Code § 16.110.

A legislative classification implicating neither suspect classes nor fundamental rights will be sustained in a challenge under the equal protection clause if the classification has a rational basis. *Jae v. Good,* 946 A.2d 802 (Pa.Cmwlth.2008). The rational basis test requires a two-step analysis: first, to determine whether the challenged statutes seek to promote any legitimate state interest or public value; and, if so, then to determine whether the legislative classification is reasonably related to accomplishing that articulated state interest. *Id.* In a rational basis analysis, it does not matter that the government has not expressed the purpose supporting its action; it is enough that some rationale may conceivably have been the purpose behind the government's decision-making. *Commonwealth v. Albert,* 563 Pa. 133, 758 A.2d 1149 (2000). "Moreover, courts are free to hypothesize reasons why the legislature created the particular classification at issue and if some reason for it exists, it cannot be struck down, even if the soundness or wisdom in creating the distinction is questioned." *Id.*

The Board has articulated its interest in developing the sexual misconduct regulations: "to better protect patients by providing guidance to the profession and the public as to prohibited conduct relating to sexual contact between practitioners and patients." 34 Pa. B. 40 (2004). It may be true that, as Dr. Moscato argues, "treating a spouse could be just as rife with the opportunities to 'exploit vulnerabilities,' 'obscure objective judgment' and 'ultimately be detrimental' to the patient's well-

being" (Petitioner's Brief at 15); but that does not make the decision to exclude everyone except spouses from this regulation irrational. The Board even expresses its reason for excluding "significant others" from the regulation which was suggested by the Independent Regulatory Review Commission (IRRC): " 'significant others' are not a legally recognized, defined group of people and that inclusion would create undue vagueness to the final-form rule-making." 34 Pa. B. 40, 41 (2004). In addition, there are several laws that recognize "the importance of marriage and has extended benefits and protections to those engaged in a marital relationship that are not available to those who choose to remain unmarried. In areas such as taxation, property, and wills and estates, our law clearly distinguishes between those who are married and those who are unmarried." *McCusker v. Workmen's Compensation Appeal Bd. (Rushton Mining Co.),* 536 Pa. 380, 392, 639 A.2d 776, 781 (1994).

Dr. Moscato and TB's relationship was less than three months old when he began treatment, and at that time the two were not married. (Notes of Testimony, March 19, 2007 at 119, 128). There is nothing irrational about the Board drawing a line between physicians treating spouses and treating non-spouses. The regulation is, therefore, constitutional.

Next, Dr. Moscato argues that the Board abused its discretion in not interpreting Section 16.110 of the Board's Regulations to apply to his situation because the regulation was designed to protect patients from physicians who may misuse their position of dominance to pursue an intimate relationship. He argues that the regulation was not intended to apply to a person involved in a committed, long-term relationship with a physician who eventually receives treatment from that physician.

██ Under Section 16.110(b) of the Board's Regulations, "[s]exual behavior that occurs with a current patient other than the ... practitioner's spouse constitutes unprofessional conduct, is prohibited and subjects the practitioner to disciplinary action...." In the present case, the Board applied the regulation as it was written. Dr. Moscato and TB were not married at the time he took over her treatment. The regulation does not address when the relationship between patient and physician starts, it only addresses whether there is a current or former patient/physician relationship. There is also nothing in the regulation to indicate that the Board meant to exclude anyone other than the physician's spouse or to include anyone that was in a "committed relationship" with a physician. In fact, as previously mentioned, the IRRC suggested adding the term "significant other" to the regulation along with spouse, but the Board decided against it because the term is vague and would have been too difficult to regulate. 34 Pa. B. 40, 41 (2004). Applying the regulation as written is simply not an abuse of discretion.

██ Dr. Moscato also argues there is no legal basis for suggesting that the treatment of Dr. Cohen as TB's psychiatrist overrides or takes precedence over TB's treatment by her primary care physician, Dr. Moscato, making Dr. Moscato's conduct unprofessional. However, the Board did not make its decision based on the fact that Dr. Moscato was TB's primary care physician while Dr. Cohen was TB's psychiatrist, but on testimony and evidence presented during the proceedings, taking into consideration that Dr. Moscato did not coordinate TB's prescriptions with Dr. Cohen when there was a potential for harmful interaction between certain drugs. Based on the testimony presented in this case, the Board found that there was substantial evidence presented to show that Dr. Moscato interfered with Dr. Cohen's treatment of TB, amounting to unprofessional conduct under Section 422.41 of the Medical Practice Act.

██ Finally, Dr. Moscato argues that if this Court finds that he has violated Section 16.110 of the Board's Regulations, and Section 422.41 of the Medical Practice Act, then the appropriate sanction in light of the circumstances of this case would be a reprimand. Alternatively, he argues that if the Court is reluctant to lift the two-year suspension, then it should stay the suspension for all but the first thirty days. The Pennsylvania Supreme Court has stated, "[i]n the absence of bad faith, fraud, capricious action or abuse of power, reviewing courts will not inquire into the wisdom of the agency's action or into the details or manner of executing agency action." *Slawek v. State Bd. Of Medical Educ. and Licensure,* 526 Pa. 316, 322, 586 A.2d 362, 365 (1991). There is no evidence or claim in the present case that the Board's decision to suspend Dr. Moscato's license for two years was fraudulent, made in bad faith, capricious, or an abuse of power. The Board, agreeing with the hearing officer, determined that Dr. Moscato "failed on numerous occasions to act in a professional, prudent manner," in particular, by interfering with Dr. Cohen's treatment of TB's mental condition. (Board's Adjudication, October 17, 2007, at 27). Without evidence indicating that a two-year suspension was made in bad faith, fraudulent, capricious or an abuse of power, this Court will not overturn the Board's decision.

For the reasons stated, the order of the Board is affirmed.

Judge SIMPSON did not participate in the decision in this case.

*O R D E R*

AND NOW, this 23rd day of October, 2008, the order of the State Board of Med-

icine, dated October 17, 2007 is **AF-FIRMED.**