Karl Gerard **LONG, D.P.M.,** Petitioner

v.

**BUREAU OF PROFESSIONAL AND OCCUPATIONAL AFFAIRS, State Board of Podiatry,** Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 7, 2014.

Decided March 30, 2015.

Kathryn L. Simpson, Harrisburg, for petitioner.

Wesley J. Rish, Counsel, Harrisburg, for respondent.

BEFORE: BONNIE BRIGANCE LEADBETTER, Judge, PATRICIA A. McCULLOUGH, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Senior Judge JAMES GARDNER COLINS.

Karl Gerard Long, D.P.M., (Petitioner) petitions for review of an order by the State Board of Podiatry (Board) denying Petitioner's petition for reinstatement of his license to practice podiatric medicine (Reinstatement Petition). For the reasons that follow, we affirm the Board's order.

Petitioner was issued a license to practice podiatric medicine in Pennsylvania on September 30, 1985. (Board Adjudication and Order (Adjudication), Finding of Fact (F.F.) ¶ 2.) On August 20, 2003, Petitioner was found guilty of murder of the third degree for the killing of his wife following a jury trial in the Court of Common Pleas of Westmoreland County. (*Id.*, F.F. ¶ 4.) The murder occurred on October 3, 1999 and the cause of death was asphyxiation. (*Id.*, F.F. ¶¶ 5, 6.) Petitioner was sentenced by the trial court to a term of imprisonment of five to ten years, and he was ordered to pay restitution to the victim's parents. (*Id.*, F.F. ¶ 12.) Petitioner appealed his conviction and the failure of the trial court to give him credit for time served on electronic home monitoring, and the Commonwealth appealed the sentence as too lenient; the Superior Court affirmed Petitioner's conviction and sentence. (*Id.*, F.F. ¶¶ 13, 14; Nov. 13, 2014 Hearing Transcript (H.T.) Exs. C–2, C–3, Reproduced Record (R.R.) at 104–140; *Commonwealth v. Long*, 876 A.2d 465 (Pa.Super., Nos. 1, 6 W.D.A. 2004, filed April 20, 2005).)

As a result of Petitioner's murder conviction, the Board, on September 9, 2004, issued an order revoking Petitioner's license to practice podiatric medicine in the Commonwealth pursuant to Section 16(a)(2) of the Podiatry Practice Act (Act).[1] (Adjudication, F.F. ¶ 3; H.T. Ex. C–1, R.R. at 90–103.) Section 16(a)(2) provides that the Board may revoke or cancel a license where a licensee is found guilty "of felony charges or an offense in connection with the practice of podiatric medicine or involving moral turpitude by a court of competent jurisdiction, or a jury." 63 P.S. § 42.16(a)(2). Petitioner held a license to practice podiatric medicine in Massachusetts at the time of his conviction; this license was also revoked. (Adjudication, F.F.¶ 16.)

During Petitioner's term of incarceration, he applied for parole four times and was denied each of these times. (*Id.*, F.F. ¶¶ 17–21; H.T. Ex. C–4, R.R. at 141–149.) Petitioner was ultimately released upon the expiration of the maximum term of his sentence on July 3, 2012. (Adjudication, F.F.¶ 22.) Following his release, Petitioner obtained employment as a construction laborer and held a position as a brick mason tender for a masonry contractor at the time of the hearing. (*Id.*, F.F. ¶ 25.) Petitioner has attempted to stay up to date on current developments in podiatry and has obtained 59 continuing education credits since his release. (*Id.*, F.F. ¶ 27.)

Petitioner submitted the Reinstatement Petition to the Board on June 19, 2013, and the Board designated a hearing examiner to hold a hearing. A hearing was held in Harrisburg on November 13, 2013, at which Petitioner testified along with five witnesses who testified as to Petitioner's good character. Prior to the hearing, Petitioner filed a motion to permit the telephonic testimony of six additional character witnesses who resided in Western Pennsylvania; the hearing examiner denied the motion. (R.R. at 8–14.)

■ The hearing examiner issued a proposed adjudication and order on April 7, 2014 denying the Reinstatement Petition. The hearing examiner concluded that Petitioner's conviction of murder in the third degree was a crime of moral turpitude and that Petitioner had failed to demonstrate that he had rehabilitated his character such that he had the good moral character required for licensure under the Podiatry Practice Act. (Adjudication, Conclusions of Law ¶¶ 10–11, Discussion at 12–16.) The Board adopted the proposed adjudication and order on June 20, 2014. This appeal followed.[2]

■ Petitioner first argues that the Board committed an error of law by applying the incorrect standard and that the Board could only require him to show that he was of good moral character at the time he applied for reinstatement and that he could resume podiatric practice with the requisite skill and attention to the safety and well-being of his patients. This argument has no merit.

The Act provides that an individual whose license to practice podiatric medicine is revoked may apply for reinstatement of the license after five years "but must meet all of the licensing qualifications of this act for the license applied for, including the examination requirement, if he

1. Act of March 2, 1956, P.L. (1955) 1206, *as amended*, 63 P.S. § 42.16(a)(2).

2. Our scope of review of the Board's order is limited to considering whether necessary factual findings are supported by substantial evidence, whether the Board erred as a matter of law, and whether constitutional rights were violated. *Stoner v. Bureau of Professional and Occupational Affairs, State Board of Medicine,* 10 A.3d 364, 371 n. 4 (Pa.Cmwlth.2010).

or she desires to practice at any time after such revocation." Section 16.2 of the Act, *added by* the Act of Dec. 20, 1985, P.L. 384, 63 P.S. § 42.16b. The licensing qualifications under the Act require that an applicant submit proof that he is "of good moral character." Section 4 of the Act, 63 P.S. § 42.4. The Board may also refuse to grant a license where a person has been found guilty of an offense "involving moral turpitude by a court of competent jurisdiction, or a jury." 63 P.S. § 42.16(a)(2). "Moral turpitude" is not defined in the Act, but this Court has stated that the term means "anything done knowingly contrary to justice, honesty, or good morals." *Garner v. Bureau of Professional and Occupational Affairs, State Board of Optometry,* 97 A.3d 437, 439 (Pa.Cmwlth. 2014); *Gombach v. Department of State, Bureau of Commissions, Elections and Legislation,* 692 A.2d 1127, 1130 (Pa. Cmwlth.1997). In *Gombach,* we explained that the terms "good moral character" and "lack of moral turpitude" have been used interchangeably and to define each other. 692 A.2d at 1130.

Citing our Supreme Court's decision in *Secretary of Revenue v. John's Vending Corp.,* 453 Pa. 488, 309 A.2d 358 (1973), Petitioner argues that the Board should consider his past crimes "only where those events occurred so recently that the particular character trait of the individual involved can reasonably be assumed to have remained unchanged." *Id.* at 362. However, *John's Vending* concerned the revocation of a wholesale cigarette dealer's license based on convictions for drug and alcohol offenses that occurred more than 15 years before the revocation. *Id.* at 360. The Supreme Court reversed the revocation finding that these old crimes had no predictive value, particularly where the licensee had held his license for more than 12 years before any allegation of impropriety had been raised. *Id.* at 361–62.

 Here, by contrast, Petitioner's license to practice podiatric medicine was revoked immediately after his conviction and there is no dispute that the murder of Petitioner's wife was a crime of moral turpitude.[3] The Board correctly recited the standard established by this Court to determine whether an applicant for a license reinstatement is "of good moral character" and further properly noted that Petitioner bore the burden of proof in establishing that he meets all of the licensure requirements for reinstatement. *Barran v. State Board of Medicine,* 670 A.2d 765, 767 (Pa. Cmwlth.1996). The Board did not solely rely on Petitioner's 1999 conviction in denying the Reinstatement Petition; instead, it reviewed Petitioner's efforts during his prison term and after to rehabilitate his character. As the Board explained, "[t]he

---

3. Though no list of crimes of moral turpitude exists under the Act, we agree with the Board that a murder conviction constitutes a crime of moral turpitude. *Cf.* 22 Pa.Code § 237.9(c)(1) (Department of Education regulation listing criminal homicide as a *per se* crime of moral turpitude); *Commonwealth. v. Uhrinek,* 518 Pa. 532, 544 A.2d 947, 950 n. 5 (1988) ("A conviction for vehicular homicide carries such a moral condemnation."). Petitioner concedes the gravity of his crime and does not dispute that it was one of moral turpitude, but he asserts that his wife was the initial aggressor and that he was also seriously injured in the confrontation that led to her death. However, as we explained in *Garner,* the "determination of whether a crime involves moral turpitude turns on the elements of the crime, not on an independent examination of the details of the behavior underlying the crime." 97 A.3d at 440 (quoting *Startzel v. Department of Education,* 128 Pa.Cmwlth. 110, 562 A.2d 1005, 1007 (1989)). Thus, to the extent Petitioner argues that the gravity of his offense was mitigated by his wife's provocation, such arguments are irrelevant and the only appropriate focus is on the offense for which he was found guilty. *Garner,* 97 A.3d at 440 & n. 7.

pivotal issue has to be whether the Petitioner has the requisite good moral character to be entrusted to hold a license to practice podiatry *today*." (Adjudication, Discussion at 15 (emphasis added).) The Board determined that Petitioner did not meet this standard.

■ Petitioner next argues that the Board failed to consider certain evidence that he asserts demonstrate his good moral character, including the testimony of his character witnesses, evidence that he has led a peaceful life aside from his criminal offense and the amount of time between his crime and the Reinstatement Petition. This Court may not overturn the Board's credibility determinations and the weight assigned to the evidence on appeal. As factfinder in this matter, the Board may accept or reject the testimony of any witness in whole or in part and the weight the Board assigns to evidence is a matter solely within its discretion. *Blair v. Bureau of Professional and Occupational Affairs, State Board of Nursing,* 72 A.3d 742, 750 (Pa.Cmwlth.2013); *Barran,* 670 A.2d at 768. Furthermore, we may not inquire into the wisdom of discretionary actions taken by the Board in the absence of bad faith, fraud, capricious action or flagrant abuse of discretion. *Slawek v. State Board of Medical Education and Licensure,* 526 Pa. 316, 586 A.2d 362, 365 (1991); *Moscato v. State Board of Medicine,* 965 A.2d 1234, 1238 (Pa.Cmwlth.2008); *Foose v. State Board of Vehicle Manufacturers, Dealers and Salespersons,* 135 Pa.Cmwlth. 62, 578 A.2d 1355, 1357 (1990).

In determining that Petitioner had not sufficiently rehabilitated his character to allow for reinstatement of his license, the Board observed that, while Petitioner had engaged in counseling, attended religious services and met with a religious advisor following his release, no witness was called to attest to these rehabilitative efforts or any positive contributions he had made to society and Petitioner also admitted that he had stopped seeing his most recent psychologist. (Adjudication, Discussion at 16.) The Board found Petitioner's testimony as to why he should be entrusted with a license to practice podiatry "shallow and unimposing." (*Id.* at 13.) The Board also found "troubling" the little remorse shown by Petitioner during his testimony.[4] (*Id.* at 13–14.) The Board noted Petitioner's "commendable" efforts to remain current on developments in podiatric medicine, to fulfill continuing education requires and to obtain gainful employment following his release; however, the Board concluded that these efforts were "not enough to merit reinstatement" and that he had "yet to rehabilitate his character through an established pattern of behavior that is honorable, trustworthy and consistent with the community's current ethical standards that shows an absence of moral turpitude." (*Id.* at 13, 16.)

Furthermore, the Board did not ignore the testimony of Petitioner's character witnesses. The Board discussed the testimony of each of Petitioner's character witnesses, finding the testimony of one of the witnesses, an elderly acquaintance who had worked with Petitioner prior to retir-

---

**4.** Petitioner also argues that the Board erred in requiring him to demonstrate remorse for his offense. Contrary to Petitioner's arguments, Petitioner's lack of remorse and rehabilitation were appropriate factors to consider in making the determination of whether he was of good moral character. *Krichmar v. State Board of Vehicle Manufacturers, Dealers*

*and Sales Persons,* 850 A.2d 861, 864 (Pa. Cmwlth.2004) (determining that board appropriately placed burden on applicant to show remorse and rehabilitation before reinstatement of a vehicle dealer and salesperson license); *Storch v. State Board of Vehicle Manufacturers, Dealers and Salespersons,* 751 A.2d 263, 264 (Pa.Cmwlth.2000) (*en banc*) (same).

ing in 1996 before the murder, "incredulous." (*Id.* at 14.) The Board gave "very little weight" to the testimony of Petitioner's character witnesses, finding that it was "more in the nature of 'opinion' testimony and the consensus of only a small group ... within the Petitioner's immediate social and/or family circle." (*Id.*) The credibility determinations by the Board are conclusive on appeal. Accordingly, we conclude that the Board did not abuse its discretion in denying the Reinstatement Petition.

■ Finally, Petitioner argues that the Board denied him due process when it denied his motion to permit the telephonic testimony of six additional character witnesses who lived in Western Pennsylvania and for whom it was impractical to travel to a morning hearing in Harrisburg. Petitioner contends that these six witnesses would have testified to his good character and work ethic and that their inclusion in the hearing would have countered the Board's criticism of Petitioner's character witnesses as consisting of only relatives or friends.

■ The essential requirements of due process are notice and a meaningful opportunity to be heard. *Department of Transportation v. Clayton,* 546 Pa. 342, 684 A.2d 1060, 1064 (1996); *Gombach,* 692 A.2d at 1129–30. Due process is a flexible notion, however, and only requires such procedural safeguards as the particular situation warrants. *Clayton,* 684 A.2d at 1064; *Flanders v. Ford City Borough Council,* 986 A.2d 964, 972 (Pa.Cmwlth. 2009). Furthermore, "administrative agencies have broad discretion to admit or exclude evidence; consequently, the exclusion of evidence alone may not constitute a procedural error." *Joseph v. North Whitehall Township Board of Supervisors,* 16 A.3d 1209, 1219 (Pa.Cmwlth.2011).

In its opposition to the motion below, the Commonwealth cited our decision in *Knisley v. Unemployment Compensation Board of Review,* 93 Pa.Cmwlth. 519, 501 A.2d 1180 (1985), wherein we held that the Unemployment Compensation Board of Review was not authorized to hold telephonic hearings over the objection of a litigant in the absence of regulations that provided safeguards to assure fair, impartial hearings. *Id.* at 1182. Petitioner argues on appeal that *Knisley* was decided solely based on a lack of regulations regarding telephonic testimony, a defect which was cured by subsequent Department of Labor and Industry regulations which provide safeguards to the parties' due process rights and assure the uniform application of such rules. 34 Pa.Code §§ 101.127–101.133. The Board argues that the hearing officer appropriately denied the motion under *Knisley.*

Though we need not decide whether *Knisley* controls our decision here, the concerns raised in that decision regarding telephonic testimony, including witnesses fraudulently misrepresenting their identities or referring to documents that had not been admitted into evidence, are equally applicable here and were appropriate considerations for the hearing officer. Unlike in the unemployment compensation context, the Board has not enacted regulations relating to when telephonic testimony may be permitted and the procedure to take such testimony. Similarly, the General Rules of Administrative Practice and Procedure, which are also applicable here, lack regulations concerning telephonic testimony. Furthermore, the hearing officer may also have appropriately considered the difficulty in evaluating the demeanor of witnesses over the telephone. Thus, in light of the valid concerns in conducting telephonic testimony and in the absence of established procedures for taking such testimony, we conclude that the hearing offi-

cer did not abuse her discretion in denying Petitioner's motion.[5]

The order of the Board is affirmed.

### ORDER

AND NOW, this 30th day of March, 2015, the order of the State Board of Podiatry in the above-captioned matter is hereby AFFIRMED.

---

5. Moreover, Petitioner did not articulate in the motion any compelling reason why it was impracticable for the six witnesses to attend the hearing; instead he simply stated that the witnesses lived in Western Pennsylvania and requested that they be allowed to testify by telephone. (R.R. at 8.) Petitioner had recourse to other avenues for procuring the witnesses' testimony, including by seeking a subpoena to compel their attendance or by filing an application to take the testimony of the witnesses by deposition prior to the hearing. *See* 1 Pa.Code §§ 35.142, 35.145–35.152.